**In the Matter of Theresa M. HEAMON.**

**No. 20S00–9106–DI–425.**

Supreme Court of Indiana.

Oct. 21, 1993.

John Roper, South Bend, for respondent.

Jeffrey D. Todd, Staff Atty., Indianapolis, for The Indiana Supreme Court Disciplinary Com'n.

PER CURIAM.

The Respondent, Theresa M. Heamon, was charged in a three-count Amended Verified Complaint for Disciplinary Action with several violations of the *Rules of Professional Conduct for Attorneys at Law.* A hearing officer appointed pursuant to Admission and Discipline Rule 23 heard the evidence and tendered his findings of fact and conclusions of law, finding violations of the *Rules of Professional Conduct* under the first two counts, and dismissing the third count. Respondent petitioned for review, challenging the hearing officer's findings and conclusions as to Count I. The parties have fully briefed their positions.

This Court's review of disciplinary cases is *de novo,* and we examine all matters presented. *Matter of Young* (1989), Ind., 546 N.E.2d 819. Our review encompasses the hearing officer's report as well as the entire record tendered in the case. The hearing officer's findings and conclusions, being products of direct observation of witnesses, are correspondingly afforded emphasis. *Matter of Smith* (1991), Ind., 588 N.E.2d 1268. However, this Court remains the ultimate factfinder and arbiter of misconduct and sanction. *Matter of Levinson* (1992), Ind., 604 N.E.2d 599; *Matter of Smith* (1991), Ind., 579 N.E.2d 450. To support a finding of misconduct, this Court must be satisfied that such is based on clear and convincing evidence. *Matter of Oliver* (1986), Ind., 493 N.E.2d 1237. Respondent's objections to the hearing officer's findings and conclusions will be resolved within the context of this review process.

Count I.

Upon review of all matters submitted before us, this Court finds that, at all times relevant to the incidents herein, Respondent was a part-time public defender and also maintained a private law practice in Elkhart, Indiana.

On October 30, 1989, Respondent agreed to represent Brenda Burris Hout ("Burris") in the dissolution of her marriage. Initially, Respondent set her fee at $350.00, plus $47.00 for filing costs. However, the record reflects dispute as to the fee ultimately agreed upon. The hearing officer concluded that a fee of $250.00 plus filing costs was agreed to after Respondent learned there were no contested matters between Burris and her husband.

At the end of their October 30 meeting, Burris paid Respondent $46.00, and received from Respondent a receipt evidencing payment and indicating a $251.00 balance due. On November 6, 1989, Burris signed a dissolution petition Respondent had prepared, paid Respondent $251.00, and received a receipt evidencing payment and indicating no further balance due. Respondent told Burris that she would file the

petition in the appropriate Michigan court the following Monday and that the marriage could be dissolved as soon as 60 days after the filing date.

On December 1, 1989, Burris became concerned after learning her husband had not received service of the dissolution petition. She telephoned Respondent at her private office, leaving a message on the answering machine requesting a return call. Respondent failed to return the call. During the next several weeks, Burris attempted repeatedly, and without success, to reach Respondent by telephone at her private practice. She tried once to reach Respondent at the public defender's office.

In December, 1989, Burris contacted Lois Thompson, a paralegal, and told her of her difficulty in contacting Respondent. Thompson agreed to try to contact Respondent and left a message on Respondent's answering machine in early January, 1990. Respondent returned the call, and, according to Thompson, indicated that the petition had been filed and that she would telephone Burris the following day. Burris waited for a call from Respondent, but none came. Respondent testified that she tried unsuccessfully to reach Burris by telephone several times after speaking to Thompson.

On January 15, 1990, Burris left a message on Respondent's answering machine indicating that she no longer desired Respondent's services and demanding return of the fees she had paid. Respondent failed to return the call or refund any portion of the fees. Respondent never filed a petition for dissolution on behalf of Burris.

At hearing, Respondent testified that she contacted Burris by telephone on November 30, 1989, after realizing that Burris's November 6, 1989 payment of $251.00 did not satisfy the entire fee. Respondent testified that she informed Burris that her fee was $350.00. Respondent further testified that she never agreed to a fee of $250.00, and that her acceptance of the November 6 payment as settling the account was an error. She contends that on November 30, 1989, she in good faith believed she could abandon her contract with Burris since she

thought Burris owed her an additional $100.00. She, therefore, asserts her representation of Burris ended on November 30, 1989. The hearing officer heard the conflicting testimony regarding the amount of agreed fee, weighed the various factors, and concluded that Respondent failed to act with reasonable diligence and promptness in violation of Ind.Professional Conduct Rule 1.3. The hearing officer's assessment of the evidence and his judgment in reconciling conflicting testimony carries great weight. *Matter of Kern* (1990), Ind., 555 N.E.2d 479. We are further persuaded by the fact that Respondent gave Burris two receipts on two separate occasions indicating Respondent's fee was $250.00. This evidence convinces us that the agreed fee was $250.00. Respondent had no reason to abandon representation and therefore had a continuing duty to exercise reasonable diligence in representing her client. The record reveals a complete lack of action on the part of Respondent during her representation of Burris. We thus conclude that Respondent's conduct violated Prof. Cond.R. 1.3.

Respondent also contends that she did not violate Prof.Cond.R. 1.4(a) by failing to keep Burris reasonably informed about the status of her case because Burris could have contacted her at the public defender's office. Burris testified that despite the many messages she left on Respondent's answering machine during several weeks in December of 1989, Respondent never returned her calls. Her testimony is supported by the fact that she contacted paralegal Thompson in another attempt to make contact with Respondent. The evidence clearly indicates Respondent consistently failed to respond to her client's requests for information. We conclude that the findings under this count establish that Respondent violated Prof.Cond.R. 1.4(a) by failing to keep her client informed about her pending case.

Respondent asserts that she worked five and one-half (5-1/2) hours on Burris's dissolution at $90.00 per hour and that no refund was due. We find this assertion unpersuasive. Respondent agreed to rep-

resent Burris for $250.00. Respondent did not satisfy the agreement; she did not even file the initial petition. The evidence is clear and convincing that Respondent violated Prof.Cond.R. 1.16(d) in that she failed to refund advance payment of fees that were not earned.

Respondent also challenges the hearing officer's conclusion that she engaged in conduct involving dishonesty, deceit and misrepresentation in violation of Prof. Cond.R. 8.4(c). We find to the contrary. The Respondent lied to her client and to Thompson, indicating to the former that the petition would be filed, and indicating to the latter that it had been filed. The findings establish conclusively that Respondent violated Prof.Cond.R. 8.4(c).

Finally, we also find that Respondent's consistent failure to act on behalf of her client and general neglect of her duties to her client was prejudicial to the orderly administration of justice, and, therefore, violated Prof.Cond.R. 8.4(d). Her disregard of her duties and the interests entrusted to her reflects poorly on the legal system and frustrates the orderly administration of justice.

Count II.

Because the Respondent has not challenged the hearing officer's findings of fact as to Count II, we accept and adopt those findings. *Matter of Vogler* (1992), Ind., 587 N.E.2d 678. Those facts are as follow: On May 30, 1989, Valerie Sharif ("Sharif") discussed with Respondent the filing of a dissolution. Respondent advised Sharif her fee would be $350.00 plus $55.00 for filing costs. On June 13, 1989, Respondent informed Sharif by letter that she could come to her office on June 19 to sign the dissolution petition Respondent had prepared.

Sharif signed the petition, and they agreed on a total fee of $405.00. Respondent then informed Sharif that the dissolution would be finalized around August, 1989.

Sharif attempted to contact Respondent through July and most of August of 1989. In late August, 1989, Sharif spoke with Respondent, at which time Respondent told her that the dissolution was proceeding more slowly than anticipated. Respondent indicated that the matter would be "before the court" in early October, 1989.

Sharif's attempts to contact Respondent during September and October were unsuccessful. Respondent telephoned Sharif in late November and apologized for neglecting her case. She then told Sharif that the dissolution would be complete before the end of 1989.

Attempts by Sharif to contact Respondent late in 1989 failed. On January 15, 1990, Sharif left a message on Respondent's answering machine indicating she desired to terminate Respondent's services. Sharif also demanded a refund of the fees she had paid, which Respondent eventually refunded. Respondent never filed the dissolution petition, nor did she take other significant action in furtherance of the dissolution.

The findings clearly and convincingly establish that Respondent violated Prof. Cond.R. 1.3. Aside from drafting the petition, there is no evidence of Respondent having taken significant action from the end of May, 1989, until her termination in early 1990. Respondent at one point even apologized to Sharif for neglecting her case. The evidence also reflects that Respondent failed to keep her client reasonably informed about the status of her case, in violation of Prof.Cond.R. 1.4(a). Despite her attempts, Sharif was unable to learn the status of her case during July and most of August, September and October, and during a significant period late in 1989. This pattern of consistent neglect on Respondent's part involves the possibility of extreme prejudice to her client. Finally, we again find that Respondent's consistent failure to act on behalf of her client and general neglect of her duties to her client was prejudicial to the orderly administration of justice, in violation of Prof.Cond.R. 8.4(d).

We find no evidence to support a conclusion that Respondent violated Prof.Cond.R. 8.4(a), (b), or (c), as charged in the complaint, and therefore agree with the hear-

ing officer's conclusion that no such violation took place.

Count III.

The allegations in Count III stem from Respondent's representation of Carlos Espinoza ("Espinoza") in 1988 and 1989 in an attempt to have his driving privileges restored. Respondent was charged with violating Prof.Cond.R. 1.3, 1.4(a), and 1.5(a) in connection with this representation.

The hearing officer found that during the course of the representation, Respondent diligently researched and investigated Espinoza's case and kept him reasonably informed as to the status of the matter. The hearing officer, therefore, concluded that there was not clear and convincing evidence of misconduct to support allegations contained in Count III.

We agree with the hearing officer's findings as to Count III and therefore find no misconduct as to that count.

■ It is now the duty of this Court to assess an appropriate disciplinary sanction. In doing so, we examine several factors: the nature of the offense, the state of mind of the Respondent, actual or potential injury, the duty of this Court to preserve the integrity of the profession, the risk to the public, and matters in mitigation or aggravation. *Matter of Cawley, Jr.* (1992), Ind., 602 N.E.2d 1022.

Respondent has demonstrated an alarming propensity to neglect the duties entrusted to her by her clients. Although we do not believe that Respondent acted with a conscious objective or purpose to achieve the particular results, her actions were for the most part predicated on a conscious awareness of the attendant circumstances of her conduct.[1] Although this is a less culpable state of mind, it still demonstrates a recklessness and dereliction of professional duty that cannot be tolerated. Such conduct impacts negatively on the profession as a whole and serves to damage an integrity a majority of practitioners strive to uphold. Public trust and confidence in the legal profession suffers as a result of the conduct demonstrated by Respondent.

Under these circumstances, we find that a period of suspension with automatic reinstatement upon showing of restitution appropriately addresses the severity of the offense. It is, therefore, ordered that the Respondent, Theresa M. Heamon, is suspended from the practice of law for a period of ninety (90) days, at the expiration of which she shall be automatically reinstated upon her showing to the satisfaction of the Disciplinary Commission that she has made restitution of all fees. This suspension is effective November 22, 1993.

Costs of this proceeding are assessed against the Respondent.

---

1. See *American Bar Association Model Standards for Imposing Lawyer Sanction, Theoretical Framework,* listing a hierarchy of mental states underlying action and corresponding levels of culpability.