In the Matter of Robert E. LEHMAN.

No. 49S00–9510–DI–1244.

Supreme Court of Indiana.

Dec. 31, 1997.

Ronald E. Elberger, Bose McKinney and Evans, Indianapolis, for Respondent.

Donald R. Lundberg, Executive Secretary, Indianapolis, for Indiana Supreme Court Disciplinary Commission.

## DISCIPLINARY ACTION

PER CURIAM.

Today we conclude that Ind.Code Section 34-4-41-4 requires that attorney fees paid by insurers out of their subrogation recoveries enure to the insured, and not the insured's lawyer, absent an otherwise permissible agreement setting forth an alternative arrangement. We also find that it is professional misconduct for the insured's lawyer to retain such attorney fees without disclosing retention of the fees to the client.

This case commenced when the Disciplinary Commission filed its *Verified Complaint for Disciplinary Action* on October 31, 1995, therein alleging that the respondent, Robert E. Lehman, violated the *Rules of Professional Conduct for Attorneys at Law.* This Court appointed a hearing officer pursuant to Ind.Admission and Discipline Rule 23, Section 11, who accepted the parties' stipulated facts, and pursuant to those facts, submitted conclusions of law and a recommendation for sanction to this Court. Both parties have requested our review of the hearing officer's

report and have briefed their respective positions.

Pursuant to the parties' stipulations, we now find that in 1994, the respondent was associated with the law firm of Wilson, Kehoe and Winingham. On March 16, 1994, a client met with the respondent at his law office to discuss representation in a personal injury claim. The client had been injured in an automobile accident two days earlier while driving a vehicle owned and insured by his wife. State Farm Insurance Company ("State Farm") provided medical payments insurance coverage incident to the wife's ownership of the automobile. The Laborers and Hod Carriers Welfare Fund ("Hod Carriers") was the client's major medical insurer. During the meeting, the client signed a contingent fee agreement providing that the respondent would receive as his attorney fee one-third of any and all amounts recovered prior to the first pre-trial conference, with escalating percentages if the case progressed thereafter. The agreement defined "amounts recovered" as "gross sums actually collected, including but not limited to sums attributable to interest, punitive damages or attorneys' fees (whether such collection is on account of a judgment or by way of compromise, settlement, or otherwise)." After the client received treatment for his injuries, the respondent began settlement negotiations with the tortfeasor's insurer and later obtained a settlement offer of $12,000, which the client accepted.[1] On December 1, 1994, the respondent and his client met, at which time the respondent explained the terms of the settlement. He provided his client with a written disbursement statement, which the client signed. That statement provided, in relevant part:

| | | |
|---|---|---|
| Gross Recovery: | | $12,000.00 |
| Less Attorney Fees (33.33%): | | |
| Robert E. Lehman | $4,000.00 | $ 8,000.00 |
| Less Expenses: | | |
| Wilson Kehoe & Winingham | | |
| Postage | $ 5.16 | |
| Copies | 16.00 | |
| Fax | 1.00 | |
| | $ 22.16 | $ 7,977.84 |
| Robert E. Lehman | | |
| Parking | $ 5.00 | |
| Mileage | 10.00 | |
| Community Med. Recs. | 15.00 | |
| Copies | 5.00 | |
| | $ 35.00 | $ 7,942.84 |
| Less Liens: | | |
| Laborers and Hod Carriers Welfare Fund —Medical | $1,188.80 | |
| State Farm | 3,710.00 | |
| | $4,898.00 | $ 3,044.04 |
| Net to Client: | | $ 3,044.04 |
| Excess Due Client ($3,515.00 State Farm— $2,515.00 in Bills Paid) | | $ 4,044.04 |

---

1. Although not expressly stated in the stipulated facts, we infer that the settlement offer was accepted prior to the first pre-trial conference.

THIS AFOREMENTIONED SETTLE-MENT FIGURE, BREAKDOWN, AND DISTRIBUTION OF SAID FIGURE IS WITH MY AUTHORIZATION AND CONSENT, AS AUTHORIZED BY MY SIGNING THIS DISBURSEMENT SHEET.

I HEREBY ACKNOWLEDGE THAT I HAVE BEEN ADVISED THAT ANY THIRD PARTY WHO HAS PAID MEDICAL EXPENSES INCURRED AS A RESULT OF THIS ACCIDENT MAY HAVE THE RIGHT TO REQUIRE RE-IMBURSEMENT UNDER THE POLICY OF INSURANCE INVOLVED, OR INDIANA LAW. I RECOGNIZE THAT ANY AND ALL OUTSTANDING MEDICAL BILLS AND/OR REIMBURSEMENT IS MY RESPONSIBILITY.

■ The respondent later deposited the $12,000 settlement draft into his trust account. Consistent with the terms of the disbursement statement, the respondent issued a trust account check to the client on December 1, 1994, for $4,044.04. Before disbursing this amount to the client, the respondent explained to him that each insurer would be paid its respective subrogation or reimbursement rights ("subrogation rights").[2] State Farm claimed subrogation rights of $3,710 against the settlement proceeds for prior payment of the client's accident-related medical bills. Hod Carriers claimed similar subrogation rights in the amount of $1,188.80. On December 1, 1994, after the client had signed the settlement disbursement statement and after the respondent had disbursed the settlement proceeds to the client, the respondent wrote trust checks to each insurer. Specifically, the respondent issued a check to State Farm in the amount of $2,473.33 and a check to Hod Carriers for $792.53, the amounts representing, respectively, an amount equal to two-thirds of each insurer's subrogation or reimbursement right for the medical expenses it had satisfied. The respondent retained as attorney fees an amount equal to

one-third of each insurer's subrogation or reimbursement rights: $1,236.67 from State Farm and $396.27 from Hod Carriers. At the time the respondent disbursed settlement proceeds to his client, he did not inform the client that he would issue trust account checks to the insurers in amounts equal to two-thirds of their respective subrogation rights nor did he inform him that he would retain one-third of the med-pay amounts as attorney fees. The respondent relied on his interpretation of I.C. 34–4–41–4 and Indiana case law as authority for retaining as attorney fees one-third of the med-pay amounts. Indiana Code Section 34–4–41–4 provides, in relevant part:

> An insurer claiming subrogation or reimbursement rights under this chapter shall pay, out of the amount received from the insured, the insurer's pro rata share of the reasonable and necessary costs and expenses of asserting a third party claim. These reasonable necessary costs and expenses include ... (3) Attorney's fees to the lesser of the amount contracted by the insured for the insured's portion of the claim or thirty-three and one-third percent (33⅓%) of the amount of the settlement.

The client did not learn that the insurers received only two-thirds of their respective subrogation rights or that the respondent had retained one-third of the amounts of such rights as attorney fees until Hod Carriers notified him of the transaction after the client signed the settlement statement.

On December 1, 1994, the respondent issued a check for $1,333.33 to Wilson Kehoe & Winingham from his trust account as payment of attorney fees in the case. The respondent did not disburse from his trust account any attorney fees to himself nor did he disburse to himself $35 in expense reimbursement, as indicated by the disbursement statement. After the transactions on December 1, 1994, the amount and source of funds retained in the respondent's trust account were as follows:

---

**2.** Subrogation has been defined as "the substitution of one person in the place of another with reference to a lawful claim, demand or right, so that he who is substituted succeeds to the rights of the other in relation to the debt or claim." BLACK's LAW DICTIONARY 1279 (5th Ed.1979). *See also Home Owners' Loan Corp. v. Henson,* 217 Ind. 554, 29 N.E.2d 873 (1940).

$1,236.67 (1/3 of State Farm's subrogation right)
$ 396.27 (1/3 of Hod Carrier's subrogation right)
$2,666.67 ($4,000 contingent attorney fee less $1,333.33 issued to Wilson Kehoe & Winingham)
$ 35.00 (Reimbursement of costs)

The Disciplinary Commission charged that the respondent violated Ind.Professional Conduct Rule 1.5(a) [3] in that his undisclosed retention of one-third of the respective subrogation rights of the insurers as additional attorney fees was contrary to law and thus an unreasonable fee. It further charged that the respondent's failure to disclose to the client, in both the contingency fee agreement and the settlement statement, that the respondent's total fee would include retention of one-third of the insurers' subrogation liens and his failure to fully disclose the method of determination of the fee constituted a violation of Prof.Cond.R. 1.5(c) and Prof.Cond.R. 8.4(c).[4] It also alleged that the respondent's retention of one-third of the insurers' liens without consultation or agreement with his client violated Prof.Cond.R. 1.7(b) [5] in that it represented a prohibited conflict of interest. Finally, the Commission charged that the respondent violated Prof.Cond.R. 1.15(a) and (c) [6] by retaining in his trust account his own property (*i.e.,* a portion of his contingency fee and his reimbursed expenses) for an unreasonable time after there had been an accounting and severance of interests between himself and his client.

The parties have stipulated that, pursuant to I.C. 34–4–41–4, there is a diversity of practice as to how the attorney fees incident to insurers' subrogation rights are disbursed among participants in resolution of claims. Pending resolution of this matter and pursuant to an understanding between the respondent and the Commission, the respondent issued to himself a check for $2,701.67 on March 1, 1996, that amount representing the net attorneys fees due to the respondent pursuant to the disbursement statement and

3. Professional Conduct Rule 1.5(a) provides:

A lawyer's fee shall be reasonable. The factors to be considered in determining the reasonableness of a fee include the following:
(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
(3) the fee customarily charged in the locality for similar legal services;
(4) the amount involved and the results obtained;
(5) the time limitations imposed by the client or by the circumstances;
(6) the nature and length of the professional relationship with the client;
(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and
(8) whether the fee is fixed or contingent.

4. Professional Conduct Rule 1.5(c) provides:

A fee may be contingent on the outcome of the matter for which the service is rendered, except in a matter in which a contingent fee is prohibited by paragraph (d) or other law. A contingent fee agreement shall be in writing and shall state the method by which the fee is to be determined, including the percentage or percentages that shall accrue to the lawyer in the event of settlement, trial or appeal, litigation and other expenses to be deducted from the recovery, and whether such expenses are to be deducted before or after the contingent fee is calculated. Upon conclusion of a contingent fee matter, the lawyer shall provide the client with a written statement stating the outcome of the matter and, if there is a recovery, showing the remittance to the client and the method of its determination.

Professional Conduct Rule 8.4(c) provides:

It is professional misconduct for a lawyer to engage in conduct involving dishonesty, fraud, deceit or misrepresentation.

5. Professional Conduct Rule 1.7(b) provides, in relevant part:

A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless:
(1) the lawyer reasonably believes the representation will not be adversely affected; and
(2) the client consents after consultation.

6. Professional Conduct Rule 1.15(a) provides, in relevant part:

A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained in the state where the lawyer's office is situated, or elsewhere with the consent of the client or third person.

Professional Conduct Rule 1.15(c) provides, in relevant part:

When in the course of representation a lawyer is in possession of property in which both the lawyer and another person claim interests, the property shall be kept separate by the lawyer until there is an accounting and severance of their interests.

the $35 of reimbursable expenses. The balance of $1,632.94, representing the one-third attorney fee based on the insurers' subrogation claims, has been retained in the trust account pending the outcome of this case.

The hearing officer found the respondent violated Prof.Cond.R. 1.5(c) by failing to disclose retention of a portion of the insurers' subrogation liens as additional attorneys fees, but that he did so upon a good faith interpretation of applicable law and without malice or an intent to deceive or commit fraud. He concluded further that there was no evidence that the respondent's retention of $5,632.94 out of the $12,000 gross settlement was an unreasonable fee proscribed by Prof.Cond.R. 1.5(a); that there was no violation of Prof.Cond.R. 1.7(b) because no conflict arose which materially interfered with his representation of or loyalty towards his client; that there was no violation of Prof. Cond.R. 1.15(a) or (c) because the respondent's prolonged retention of his own funds in his trust account was inadvertent and done without malice; and that there was no violation of Prof.Cond.R. 8.4(c) because the respondent did not intend to deceive his client with the inaccurate disbursement statement.

In its petition for review of the hearing officer's conclusions, the Commission argues that the respondent's actions violated Prof. Cond.R. 1.5(a), 1.7(b), 1.15(a) and 8.4(c). In the respondent's petition for review, he contends that he did not violate Prof.Cond.R. 1.5(c) by failing to disclose the method by which his total fee was calculated because the disputed subrogation fee was not part of the gross recovery in the case, but rather an additional amount recovered after the representation of the client was concluded. Therefore, he argues, the duty to disclose to the client does not attach. The respondent further asks this Court to provide guidance as to who, among the participants to the underlying personal injury litigation, is entitled to retain the disputed subrogation attorney fees.[7]

### I. Nondisclosure of Additional Attorney Fee

■ Professional Conduct Rule 1.5(c) requires that contingent fee agreements be in writing and that such agreements state the method by which the fee is to be determined and the percentage or percentages that shall accrue to the lawyer in the event of settlement. The rule requires that, at the conclusion of representation, a lawyer provide his client with a written settlement statement stating the outcome of the matter and, if there is a recovery, showing remittance to the client and the method of its determination. Professional Conduct Rule 8.4(c) prohibits lawyers from engaging in conduct involving fraud, deceit, dishonesty, or misrepresentation. The respondent's contingent fee agreement with the client stated that he would keep as his fee one-third of all amounts recovered. He recovered $12,000 from the tortfeasor's insurer. His settlement statement indicated that he kept $4,000 of that as his fee. However, after later retaining an additional one-third of the subrogated amounts as attorney fees, the respondent's actual total fee amounted to $5,632.94. He twice failed to disclose his retention of the additional fee to his client: first in the contingency fee agreement and later in the inaccurate settlement statement. The client eventually learned of the additional fee from his own insurance carrier and was surprised to learn of the additional $1,632.94 fee. Based on our findings, we conclude that the respondent violated Prof. Cond.R. 1.5(c) by failing to disclose the percentage of settlement that accrued to him as attorney fees upon settlement of the claim and by failing to provide the client with a settlement statement which accurately showed the remittance to the client and the method of its determination. The respondent also violated Prof.Cond.R. 8.4(c) in that his nondisclosure represents conduct involving misrepresentation.

### II. Reasonableness of the Fee

■ Professional Conduct Rule 1.5(a) provides that attorney fees must be "reasonable." There is no specific definition as to what constitutes a reasonable attorney fee. A particular fee's reasonableness is gauged

---

7. The hearing officer suggested that the disputed attorney fees be reimbursed or paid back to State Farm and Hod Carriers, as requested by the client in his grievance to the Commission.

through careful consideration of many factors, including the nonexclusive list provided in Prof.Cond.R. 1.5(a).[8] Underlying the claim that the respondent's fee was unreasonable was his retention of an additional one-third of the subrogation liens. Central to the analysis of the reasonableness of the respondent's fee is the existence of the written contingency fee agreement calling for the respondent to retain one third of "all amounts recovered" and the settlement statement reflecting that the respondent retained only one third of the settlement as his fee. Also collaterally relevant is determination of whether the respondent was, as a matter of law, entitled to one-third of the subrogated med-pay amounts.

■ Where there is a written fee agreement specifying the amount of legal fees the client will pay, an attorney's retention of a fee greater than that specified in the agreement is strongly indicative of an unreasonable fee. Thus, an attorney who agreed to accept one-third of any gross settlement as his fee, and who thereafter actually retained 34.6 percent of the gross settlement due to his retention of one quarter of a Medicare subrogation lien, was found to have retained an unreasonable fee. *In re Brown*, 669 N.E.2d 989 (Ind.1996). Similarly, an attorney who retained his entire ten percent contingent fee, which was based on total future payments of a structured settlement, from the judgment debtor's first installment payment was found to have charged an unreasonable fee after the debtor defaulted. *In re Myers*, 663 N.E.2d 771 (Ind.1996). In that case, we noted that:

> The client's ... expectation was that the respondent's fee would amount to ten percent of the funds actually recovered. In fact, the fee the respondent retained approached thirty percent of the total actual recovery. We therefore conclude that the respondent's fee was unreasonable ...

*In re Myers*, 663 N.E.2d at 774. In the present case, the client and the respondent's agreement called for the respondent to retain one-third of "gross sums actually collected." The entire amount collected was $12,000. The disbursement statement signed by the client indicated that the respondent retained $4,000 of that as his fee. In reality, the respondent retained $5,632.94, or 47 percent of the gross sum actually collected, or some 14 percentage points more than that provided in the contingent fee agreement. The respondent agreed to keep one third as his fee but actually kept much more. His retention of an amount far exceeding the agreed fee is presumptive of an unreasonable fee.

We have also held that retention of contingent legal fees beyond that allowed by applicable law may indicate an unreasonable fee. *In re Maley*, 674 N.E.2d 544 (Ind.1996) (contingent fee beyond the presumptive limit in worker's compensation case). Indiana Code Section 34–4–41–1 states that an insurer who recovers funds through subrogation is obligated to pay a "pro rata share of the reasonable and necessary costs and expenses of asserting the third party claim," including attorneys fees up to "the lesser amount of the amount contracted by the insured for the insured's portion of the claim or thirty-three and one third percent (33⅓) of the amount of the settlement." The statute, however, does not expressly indicate who, between the insured and the insured's attorney, is entitled to retain those fees. The Commission contends that the statute requires the fees to go to the insured. The respondent argues that the statute allows the insured's attorney to retain the additional fees.

■ A statute is "ambiguous" and open to judicial determination where it is susceptible to more than one interpretation. *Amoco Production Co. v. Laird*, 622 N.E.2d 912 (Ind.1993). Where a statute is ambiguous, we attempt to give effect to the intent of the legislature. *Freeman v. State*, 658 N.E.2d 68 (Ind.1995). Indiana Code Section 34–4–41–1 provides a mechanism for the insurer to participate in allocation of recovery costs when it benefits from a claimant's recovery of a claim. The insurer's obligation is to absorb its *pro rata* share of the recovery expenses, including attorneys fees based on amount agreed to between insured and the insured's lawyer, or one-third of the settlement, whichever is less. Since the insurer does not

---

8. *See* footnote 2, *supra.*

independently contract with the insured's attorney for representation on the claim against the third party tortfeasor, its obligation for payment of recovery costs is based on the agreement between the attorney and the client. Had the legislature intended for the insured's attorney to retain *an additional* amount on top of the agreed contingency fee, it would not have identified the insurer's cost sharing obligation as a *"pro rata* share" of the cost of representation resulting in settlement. Because the insurer's cost sharing obligation is expressly referenced to the contingent fee agreement between the insured and her lawyer, we find that the statute must be construed to require that the *pro rata* share is to be remitted to the insured/client, unless the lawyer and the client have expressly agreed to an otherwise permissible alternative arrangement. Statutes will be construed so as to prevent absurdity, hardship, or injustice. *Indianapolis Union Railroad Co. v. Waddington,* 169 Ind. 448, 82 N.E. 1030 (1907). Our interpretation of I.C. 34–4–41–4 provides that, pursuant to its provisions, lawyers may not retain undisclosed contingent fees beyond that agreed to with their clients.

Based on the fact that the respondent retained a fee greatly in excess of that agreed to by the client, we find that the respondent violated Prof.Cond.R. 1.5(a) by retaining an unreasonable fee. We note that, based on our holding today, the respondent retained his fee contrary to the application of controlling law. However, we recognize that the respondent's retention of one-third of the subrogated amounts was pursuant to a colorable (albeit erroneous) interpretation of that law. We are told that the respondent's view of the law is contrary to prevailing practice. *See Erie Insurance Co. v. George,* 681 N.E.2d 183, 194 at n. 17 (Ind.1997). However, until this case, the courts had not considered the question of who among the parties to an action are entitled to retain attorney fees portion of amounts subrogated pursuant to I.C. 34–4–41–4. We therefore attach no culpability to the respondent's interpretation of the law, given that its ambiguity was heretofore unresolved.

The respondent argues that the total gross recovery in the case was actually $16,898, because the $4,898 medical payment from the tortfeasor's insurer to the client's insurers represented an additional transaction wholly distinct from the initial settlement. He similarly asserts that his right to receive attorneys fees out of the insurer's subrogation recovery is a separate and distinct issue from the amount to which he was entitled pursuant to the contingency fee agreement. Those arguments are without merit. The total gross recovery for the client's injury was $12,000, subrogated amounts included, as indicated by the respondent's own disbursement statement. Thus, the respondent's retention of the subrogated amount was not a transaction wholly distinct from his fee agreement with the client. Further, his fee agreement with his client covered "all amounts recovered." The subrogated amounts were included in the $12,000 settlement and covered by the fee agreement between the respondent and his client.

### III. Conflict of Interest

A lawyer may violate Prof.Cond.R. 1.7(b) if the lawyer's representation of a client is "materially limited" by the lawyer's own interests, unless the lawyer reasonably believes the representation will not be adversely affected and the client consents after consultation. The Commission charges that the respondent's "own economic interest in maximizing his attorney fees," an interest which the Commission argues manifested itself in the respondent's retention of the additional fees, constituted self-interest which materially limited his representation of the client.

■■■■ Ordinarily, negotiation of a fee agreement is not a conflict that carries any implications for Prof.Cond.R. 1.7(b). However, in this case the record does not indicate that the respondent discussed with the client the legal issues raised by his view of the fee arrangement. Even if he held his view in good faith, there is certainly room for debate. His failure to explain this issue was affected by his self-interest. Therefore, the client had not consented after consultation to the alleged tainting self-interest. Conflicts of interest are prohibited because they may mate-

rially interfere with the lawyer's independent professional judgment or foreclose courses of action that otherwise reasonably should be pursued on behalf of a client. *Comment* to Prof.Cond.R. 1.7. Here the client was foreclosed from challenging the respondent's view of I.C. 34–4–41–4. Because the respondent relied on his view of the legal effect of I.C. 34–4–41–4 and did not disclose the potentially different views of that statute to the client, his self-interest affected the client adversely.

## IV. Respondent's Retention of his Property in his Trust Account

Professional Conduct Rule 1.15(a) requires lawyers to keep clients' property that is in the lawyers' possession in connection with a representation separate from their own. Subsection (c) provides that, should both the lawyer and another person claim interest in such property, the lawyer must separately maintain the property until there is an accounting and severance of interest. The Commission alleges that, after the client signed the settlement statement on December 1, 1994, and received settlement funds pursuant to that statement, the respondent left his own funds in his trust account for an unreasonable period of time. The stipulated facts reveal that, after the client received settlement proceeds on December 1, 1994, the respondent left $2,666.67 of his fee and $35 of reimbursed costs in the trust account for several months.

▮ We find no violation of Prof.Cond.R. 1.15. A lawyer should in the ordinary course of business transfer earned fees, other than minimum balance requirements or other nominal amounts, from the lawyer's trust account. There is nothing in the record to indicate that the respondent's property was retained in his trust account for any improper motive or used improperly or to the detriment of any client.

## V. Sanction

▮ Having found that the respondent violated Prof.Cond.R. 1.5(a), 1.5(c), 1.7(b) and 8.4(c), it is now the duty of this Court to assess an appropriate sanction. In this analysis, we examine the nature of the misconduct, the lawyer's state of mind which underlies the misconduct, actual or potential injury flowing from the misconduct, the duty of this Court to preserve the integrity of the profession, the risk to the public in allowing the respondent to continue in practice, and any mitigating or aggravating factors. *In re Heamon*, 622 N.E.2d 484 (Ind.1993). We will also consider the hearing officer's recommendation, although it is not binding. *In re Rajan*, 526 N.E.2d 1185 (Ind.1988). The hearing officer recommended that no sanction be imposed against the respondent based on his conclusion that the respondent's misconduct arose from his good faith interpretation of existing law. However, we do find misconduct deserving sanction in the respondent's failure to disclose his *actual* fee to his client in both the contingency fee agreement and the settlement statement. We are aware that both of those documents were executed before the respondent retained the fees from the subrogation liens. However, the respondent should nonetheless have informed his client of the actual fee he intended to retain for his services by, for example, at least discussing with the client how subrogation issues would be settled. Discussion of potentially different views of the legal effect of I.C. 34–4–41–4 was also required for the client to consent to the fee arrangement the respondent sought. Regardless of what the statute may or may not require, our ethical rules requiring attorneys expressly to disclose to clients the fee terms of contingency fee agreements are designed to allow the clients to participate intelligently in the bargaining process and to prevent overreaching by lawyers. The respondent chose to not inform his client of his retention of additional fees. We therefore conclude that a disciplinary sanction is appropriate in this case to underscore our insistence that lawyer's contingency fees be expressly and clearly disclosed to clients.

It is, therefore, ordered that the respondent, Robert E. Lehman, is hereby reprimanded and admonished for the misconduct occurring in this case. It is further ordered that the funds held in trust by the respondent be remitted to the client so that the client may disburse the funds as he sees fit.

The Clerk of this Court is directed to provide notice of this order in accordance with Admis.Disc.R. 23(3)(d) and to provide the clerk of the United States Court of Appeals for the Seventh Circuit, the clerk of each of the Federal District Courts in this state, and the clerk of the United States Bankruptcy Court in this state with the last known address of the respondent as reflected in the records of the Clerk.

Costs of this proceeding are assessed against the respondent.

DICKSON, SULLIVAN, SELBY and BOEHM, JJ., concur.

SHEPARD, C.J., concurs and dissents, with separate opinion.

SHEPARD, Chief Justice, concurring and dissenting.

I join in the Court's findings and conclusions about Robert Lehman's violations of the *Rules of Professional Conduct.* I disagree about the sanction. Simply put, Lehman prepared an agreement providing for a one-third contingent fee if the case was settled before the pre-trial conference. Actually, Lehman wanted about a 50% fee. He expected the lienholders to pay him their pro rata one-third of their liens and he wanted the client to pay him a third of the gross recovery. Lehman worked pretty hard to keep the client from knowing what he intended to charge for his services. If Lehman had told the client in the beginning that he would charge a minimum fee of one-half, the client might well have shopped around. Instead, the client learned only from his union how much Lehman had kept for himself.

I think Lehman's behavior was intentionally surreptitious, and I would suspend him for it.