Bruce TUNNY, Appellant–Defendant,

v.

ERIE INSURANCE COMPANY, Appellee–Plaintiff.

No. 41A04–0211–CV–557.

Court of Appeals of Indiana.

June 30, 2003.

Richard R. Skiles, Skiles Hansen Cook & DeTrude, Indianapolis, IN, Attorney for Appellant.

Thomas C. Hays, Carol M. Wyatt, Lewis & Wagner, Indianapolis, IN, Attorneys for Appellee.

## OPINION

SULLIVAN, Judge.

Bruce Tunny appeals from the trial court's grant of summary judgment which ordered that Erie Insurance ("Erie") pay him $6,914.38 as final payment on his underinsured motorist ("UIM") coverage. The issue which he presents for our review is whether the trial court erred in determining that Erie was entitled to reduce the limits of the UIM coverage by the amount of attorney fees paid by Tunny's employer's worker's compensation carrier to Tunny's attorney, Richard Skiles.

We reverse.

On September 30, 1998, Tunny was injured in an automobile collision while he was acting in the scope of his employment with Tunny Brothers Masonry. His vehicle was struck by a vehicle driven by Yi Cheng Zheng. GRE Insurance Company ("GRE"), Tunny Brothers Masonry's worker's compensation carrier, paid $29,383.52 to or on Tunny's behalf for medical bills and temporary total disability. Pursuant to Indiana Code § 22–3–2–13 (Burns Code Ed. Supp.2002), GRE held a lien against the payment made to Tunny.

Tunny was given a permanent partial impairment ("PPI") rating of 10% by his physician, which was eventually compromised to 5% by Tunny and GRE. Tunny was paid $3,750.00 by GRE for his PPI.[1]

GRE maintained a lien on that payment also.

Without filing suit, Tunny received $50,000.00 from Zheng's insurer, American Economy Insurance Company, as settlement for Tunny's claims against Zheng. Tunny used this settlement to reimburse GRE for the payments it had made to him and on his behalf. Out of the $29,383.52 which comprised reimbursement for the lien for medical bills and temporary total disability, seventy-five percent, or $22,037.64, went to GRE to satisfy its lien, and the remaining $7,345.88 was paid to Skiles, as required by I.C. § 22–3–2–13, to compensate Skiles for protecting GRE's lien. Tunny also reimbursed GRE $2,500.00 as two-thirds of the PPI payment made to him, and Skiles received $1,250.00 from the proceeds of the settlement for protecting GRE's lien for the PPI disbursement made to Tunny.

Tunny and Erie arbitrated Tunny's entitlement to UIM benefits. The arbitrator found Tunny's total damages to be $112,500.00. However, the UIM coverage had a limit of $100,000.00. Tunny and Erie could not agree on the amount which Erie owed Tunny for his UIM coverage, and on April 20, 2001, Erie filed a Complaint for Declaratory Judgment to have the trial court determine the amount of set-off that Erie was entitled to deduct from the policy limit. On May 2, 2001, Erie issued a check for $35,154.12 to Tunny and Skiles. Erie calculated the amount as follows:

| | |
|---|---|
| $ 100,000.00 | Limit of UIM coverage |
| (50,000.00) | Amount paid by or for Zheng |
| (7,500.00) | Amount payable for 10% PPI rating |
| (7,345.88) | Amount GRE paid to Skiles for recovering on the first lien |
| $ 35,154.12 | |

On March 27, 2002, Erie filed a motion for summary judgment upon its complaint

---

1. Had the PPI rating remained at 10%, GRE would have had to pay $7,500.00 to Tunny.

for declaratory judgment. On August 14, 2002, the trial court issued its ruling on the motion and determined that Erie was entitled to a dollar for dollar set-off for the amount of the benefits received by Tunny from GRE but which Tunny did not repay to GRE. That amount was $8,595.88, the entire amount of attorney fees which had been paid to Skiles according to the requirements of I.C. § 22–3–2–13.

Tunny claims that the trial court erred in determining that Erie was entitled to reduce the award by the amount of attorney fees which GRE paid to Skiles. He asserts that the recovery of the worker's compensation carrier's lien is for the benefit of the carrier, and not the injured party. He claims that allowing the limit of the UIM coverage to be reduced by the amount of the attorney fees already paid by GRE dilutes his recovery and provides a windfall to Erie. Further, he asserts that Skiles is entitled to keep GRE's contribution as reimbursement from GRE which is separate to that which Skiles will receive as compensation for representing Tunny in his collections from Zheng and Erie.

When reviewing an entry of summary judgment, we apply the same standard as the trial court. *Bowen v. Monroe Guar. Ins. Co.,* 758 N.E.2d 976, 977 (Ind.Ct.App. 2001). Summary judgment is appropriate when the evidence designated to the trial court demonstrates that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C). When material facts are not in dispute, our review is limited to determining whether the trial court correctly applied the law to the undisputed facts. *Bowen,* 758 N.E.2d at 977. Even though some special rules of construction of insurance contracts have been developed because of the disparity in bargaining power between insurers and insureds, if a contract is clear and unambiguous, the language therein must be given its plain meaning. *Beam v. Wausau Ins. Co.,* 765 N.E.2d 524, 528 (Ind.2002), *reh'g denied.* Where ambiguities exist, insurance policies are to be construed strictly against the insurer and the policy language is viewed from the standpoint of the insured. *Id.* Only if reasonable persons would differ as to the meaning of the terms will a contract be found to be ambiguous. *Id.* In insurance contracts, an ambiguity is not affirmatively established simply because controversy exists and one party asserts an interpretation contrary to that asserted by the opposing party. *Id.*

■ Beginning our review with the contract for UIM coverage which was entered into between Erie and Tunny, we are called upon to interpret the language used by Erie. The reduction provision contained in the insurance policy states:

"The limits of protection available under this uninsured/underinsured motorists coverage will be reduced by:

1. The amounts paid by or for those liable for bodily injury or property damage to anyone we protect.

2. *The amounts paid or payable under any workers* [sic] *compensation,* disability benefits or similar law.

3. The amount of any liability protection paid or payable to anyone we protect. This includes all sums paid under the liability coverage of this policy." Appendix at 82 (emphasis supplied).

Tunny claims that the italicized language is ambiguous and that it must be interpreted in his favor.

In *Wildman v. Nat'l Fire and Marine Ins. Co.,* 703 N.E.2d 683 (Ind.Ct.App.1998), *trans. denied,* this court reviewed nearly identical language in a reduction clause in an insurance contract. At issue in *Wildman* was the use of the phrase " '[a]ny

amount payable under this coverage shall be reduced by all sums paid or payable under any worker's compensation disability benefits or similar law.' "[2] *Id.* at 686. This court determined that the phrase "sums paid or payable" was subject to various interpretations by reasonable people. *Id.* at 687. The court noted that one could interpret the phrase to mean the amount of worker's compensation benefits originally received by the insured or the benefits retained after subtraction of the compensation carrier's lien. *Id.* Therefore, the phrase was held to be ambiguous and to be construed in favor of the insured. *Id.* This court then held that the insurer was entitled to reduce the payment by only the amount of worker's compensation benefits received by the worker and not subject to a repayment obligation. *Id.*

In the present case, Erie's argument at the summary judgment hearing leads us to conclude that the phrase "amounts paid or payable under any workers [sic] compensation" is also ambiguous. Erie argued that it could reduce the limit of the policy by $7,500.00, the amount of the PPI payment which Tunny would have received had he not compromised the claim. As an alternative argument, Erie asserted that it could reduce the limit of the policy by $1,250.00, the amount which Skiles retained as his statutorily mandated fee from GRE after Tunny settled with Zheng's insurer and reimbursed GRE for the PPI payment. In this case, not only could reasonable people interpret the language differently, the insurer itself had two alternative, yet reasonable interpretations of the language. However, even after determining that the contractual language is ambiguous and must be construed in favor of Tunny, we must also determine whether the trial court correctly interpreted the language in deciding that Erie could reduce the limit of the policy by the amount which GRE was statutorily required to pay to Skiles.

Before determining whether the trial court correctly interpreted the insurance contract, we must begin with a review of the public policy underlying worker's compensation and the reimbursement to insurers of benefits which have been paid. The purpose behind worker's compensation is to aid workers and their dependents and shift the economic burden for employment related injuries from the employee to the employer and consumers of its product and services. *Spangler, Jennings & Dougherty P.C. v. Indiana Ins. Co.*, 729 N.E.2d 117, 120 (Ind.2000). Worker's compensation is intended to provide an expeditious remedy which will guarantee the injured party some recovery for an industrial accident. *Id.* at 120–21. The Worker's Compensation Act also provides a way to seek compensation from third-parties who caused the injuries. *Id.* at 120. An employee may accept worker's compensation benefits while pursuing a third-party action. *Id.*

Indiana Code § 22–3–2–13 allows an injured employee to choose between worker's compensation and third-party judgments in some situations so that recovery may be maximized. *Spangler, Jennings & Dougherty P.C.*, 729 N.E.2d at 121. If the final judgment in the third-party suit is less than the amount of the worker's compensation and medical expense benefits,

---

**2.** We assume that a comma appeared between the words "compensation" and "disability" in the insurance contract and that its absence in the *Wildman* opinion is the result of an inadvertent typographical error in transcribing or quoting from the record. Otherwise worker's compensation medical benefits, impairment rating payments and any other worker's compensation payments *except* disability payments would not be subject to the reduction provision.

the employee may choose to accept the judgment and reimburse the worker's compensation payor or assign all rights to the judgment to the worker's compensation carrier. I.C. § 22–3–2–13. If the amount received through litigation or settlement is more than the worker's compensation benefits, the employee must reimburse the worker's compensation carrier and may keep the remainder of the judgment or settlement. *Id.*

 Ordinarily, whatever the attorney obtains for the injured employee through settlement or third-party action against the tortfeasor is used to reimburse the worker's compensation carrier and pay the attorney fees. *Spangler, Jennings & Dougherty P.C.*, 729 N.E.2d at 123. The client, or injured employee, keeps the remainder. *Id.* at 123–24. The worker's compensation carrier must pay a fee to the injured employee's lawyer for collecting on its lien through the third-party litigation. *Id.* at 122. Indiana Code § 22–3–2–13 states:

> "the employer's compensation insurance carrier shall pay ... to the attorney at law selected by the employee or his dependents, a fee of twenty-five per cent (25%), if collected without suit, of the amount of the benefits actually repaid, after the expenses and costs in connection with the third party claim have been deducted therefrom, and a fee of thirty-three and one-third per cent (33%), if collected with suit. ..."

As stated in *Spangler, Jennings & Dougherty P.C.*, because an injured employee must choose between the third-party judgment and the worker's compensation and medical expense benefits, or in some instances, because the legislature has made that choice for the employee, there is no reason an attorney should recover a percentage of the whole of both awards. 729 N.E.2d at 122.

 The basic foundation for resolving the question before us rests upon what payments an injured employee is entitled to after the injury occurs and what requirements are placed upon that employee and his employer or the worker's compensation carrier by I.C. § 22–3–2–13. As previously discussed, worker's compensation is intended to provide an injured employee with a guaranteed payment for an injury in an expeditious manner. More importantly, as alluded to by our Supreme Court in *Spangler, Jennings & Dougherty P.C.*, the injured employee is entitled to the worker's compensation benefits regardless of whether or not any action is taken against the third party tortfeasor, a settlement or judgment is acquired by the injured employee, or the injured employee is able to collect against the tortfeasor. What is required is that if an injured employee collects an amount from a tortfeasor which exceeds the amount of worker's compensation benefits received by the injured employee, the employee must reimburse to the worker's compensation carrier from the amount received from the tortfeasor the amount of compensation already paid by the worker's compensation carrier. I.C. § 22–3–2–13. Literally, this means that the employee retains the rights to the worker's compensation payments and transfers to the worker's compensation carrier, the rights for the settlement or judgment against the tortfeasor, to the extent that the settlement or judgment satisfies the lien held by the worker's compensation carrier.

This interpretation is supported by the manner in which the worker's compensation statute requires the compensation carrier to pay the attorney who represented the injured employee in the third-party action as compared to the more general subrogation provisions of insurers of personal injury actions which are contained in

Ind.Code 34–53–1 (Burns Code Ed. Repl. 1998). The worker's compensation statute requires the worker's compensation carrier to pay to the injured employee's attorney a fixed amount of 25% or 33⅓%, depending upon whether suit was filed to collect against the third-party tortfeasor. The percentage is computed upon the amount which it receives as reimbursement to fulfill its lien. I.C. § 22–3–2–13. The more general insurance subrogation statute utilizes a different method to determine the amount which the insurer is required to pay to the injured claimant's attorney who collects on the "lien" the insurer holds under its subrogation and reimbursement rights. According to I.C. § 34–53–1–2, the insurer must pay to the injured claimant's attorney the lesser of the amount contracted by the insured for the insured's portion of the claim or 33⅓% of the amount of the settlement.

In *Matter of Lehman,* 690 N.E.2d 696 (Ind.1997), our Supreme Court reviewed Ind.Code 34–4–41 (Burns Code Ed. Supp. 1992), which is the previous statutory embodiment of I.C. 34–53–1. In *Lehman,* our Supreme Court determined that the insurer's relationship with the insured's attorney is based upon the agreement between the attorney and injured claimant. 690 N.E.2d at 703. Relying upon that relationship and the legislature's pronouncement that the insurer's cost sharing obligation was a "pro rata share" of the reasonable and necessary costs and expenses of maintaining the third-party action, the Court determined that the insurer's pro rata share of the costs of the action, including attorney fees, must be remitted to the injured claimant/insured, unless the attorney and injured claimant have expressly agreed to an otherwise permissible agreement. *Id.* The Supreme Court then determined that the injured claimant's attorney could not retain un- disclosed contingent fees beyond that agreed to with the injured claimant. *Id.*

Contrary to Erie's assertions, the analysis and holding of *Lehman* are of little import to our analysis of the worker's compensation statute except to the extent that the differences in the two statutes are relevant to explain the meaning of the worker's compensation statute and the relationship between the various payments among the injured employee, the worker's compensation carrier, the injured claimant's attorney, and the third-party tortfeasor.

Indiana Code § 22–3–2–13 requires payment to the attorney by the worker's compensation carrier not based upon any agreement between the injured employee and the attorney, but because of the language of the statute and at one of the two rates set by statute. The agreement between the injured employee and the attorney is wholly irrelevant except to the extent it names the attorney whom the worker's compensation carrier must pay. Herein lies the disagreement between the parties as to what monetary amounts are indeed deemed to have been paid to the injured employee and what amounts have not.

In *Spangler, Jennings & Dougherty P.C.,* relying upon its decision in *Indiana State Highway Comm'n v. White,* 259 Ind. 690, 291 N.E.2d 550 (Ind.1973), our Supreme Court noted that the injured employee should not have to pay attorney fees on the worker's compensation award because the employee should get those fixed benefits without doing anything at all. Nothing could be more true. However, the reimbursement to the worker's compensation carrier from the third-party settlement is not a reimbursement of the worker's compensation *payments* as *White* and *Spangler, Jennings & Dougherty* may be read to imply, but rather, of the

*amount* of the payments. As otherwise stated in *White,* the *judgment or settlement* for an injured employee or a deceased employee's dependents *inures to the benefit of the employer or its compensation insurance carrier* to the full extent of the employer's obligation resulting from the employee's work-related injury. 259 Ind. at 696, 291 N.E.2d at 554.

This last statement means that while the amount reimbursed to GRE was equal to the amount of worker's compensation benefits paid to Tunny (and will be whenever the settlement from the third-party is greater than the amount of the worker's compensation payments), Tunny did not reimburse the worker's compensation benefits to GRE. Instead, GRE is collecting a third-party judgment to satisfy its lien. The fee which GRE must pay to Skiles is not for Tunny receiving worker's compensation benefits but for Skiles protecting GRE's lien. Tunny had already received his worker's compensation benefits before GRE had a lien, and in the event that Tunny did retain counsel to assist in the collection of worker's compensation benefits, the attorney fees would come from those payments, not from the later reimbursement to GRE.

This is true in this case because as stated in a sworn affidavit, Skiles acknowledged that according to the agreement entered into between him and Tunny, the attorney fees which Tunny owed to him were to be a percentage of "the total recovery from American Economy and Erie less the total amount repaid to GRE." Appendix at 69. Therefore, Skiles was to receive the statutorily mandated amount from GRE for protecting its lien and recovering upon it from the third-party tortfeasor. The amount of the settlement

from which that reimbursement came was $50,000.00. Of this, a total of $33, 133.52 was needed to satisfy GRE's lien.[3] From that amount, Skiles received a total of $8,595.88. Of this, not one cent was attributable to any action Skiles took on behalf of Tunny. In addition, Tunny only retained $16,866.48 of the settlement from Zheng's insurer as the difference between the $50,000.00 settlement and the $33,133.52 which satisfied GRE's lien. Therefore, Tunny owed Skiles a percentage of the $16,866.48 which Tunny retained, just as they agreed.

At this point, it is necessary to point out what may be a difference between what theoretically happens to the attorney fees owed by the worker's compensation carrier and what happens in reality. Indiana Code § 22–3–2–13 is written to imply that the entire amount of the lien is returned to the worker's compensation carrier who will then reimburse the attorney his percentage of the award from that amount. However, as seems to have occurred in this case, Tunny "retained" the portion of the reimbursement which Skiles was to receive and Tunny paid that amount to Skiles. It is apparent that this practice is at the very least, not uncommon.

In *Wildman, supra,* this court determined that the UIM insurer could reduce the payment by the amount of worker's compensation benefits retained by the injured employee. In footnote 1 of the opinion, the court noted that two-thirds of the amount paid by the worker's compensation carrier to the injured employee had to be reimbursed to satisfy the insurer's lien. *Wildman,* 703 N.E.2d at 685. The opinion notes that the injured employee retained the remaining one-third portion of the pay-

---

**3.** The amount for the lien is made up of the payments for medical benefits and temporary total disability plus the payments for the PPI.

ment. *Id.* While it is not explicitly stated in the opinion, one assumes that the injured employee retained that amount to use to reimburse his attorney according to I.C. § 22–3–2–13. The *Wildman* decision could be read to mean that the injured employee would be deemed to have retained that amount and that the insurer could reduce the amount payable, or the policy limit in this case, by the amount of the attorney fees. Nonetheless, such practice would be incorrect for two reasons. First, the injured employee retains the entire worker's compensation payment. The worker is entitled to that amount even if no third-party action is taken and does not have to reimburse that amount unless a sufficient recovery is made against a third-party. Stated differently, in the event of a settlement with the third-party tortfeasor, the injured employee retains from the settlement with the third-party only the amount which exceeds that which satisfies the lien of the worker's compensation carrier. The second reason that the injured employee cannot be deemed to have retained the amount which is to be paid to his attorney is that the fee is not for any benefit provided to the injured employee. Rather, the amount is based solely upon the share of the representation which the attorney has done for the worker's compensation carrier in collecting upon its lien. Consequently, to the extent that the *Wildman* decision could be read to hold that the UIM insurer could reduce the policy limit by the amount of the attorney's fees to be paid by the worker's compensation carrier if those fees are not directly paid to the attorney by the worker's compensation carrier, we decline to follow it.

Based upon these considerations, and redirecting our attention to the UIM policy before us, we conclude that Erie may not reduce the policy limit by the amount which GRE was required to reimburse Skiles. According to the reduction clause in the UIM policy, Erie was entitled to reduce the policy limit by the amount paid by Zheng's insurer and for the amounts paid for worker's compensation benefits. However, because Tunny effectively retains only $16,866.48 of the $50,000.00 settlement, Tunny may be charged with receiving only that amount.[4] The amount which Erie owed Tunny according to the UIM policy is calculated as follows:

| | |
|---|---|
| $ 100,000.00 | Limit of UIM coverage |
| (33,133.52) | Worker's compensation benefits received by Tunny |
| (16,866.48) | Amount retained by Tunny from settlement with Zheng's insurer, American Economy Insurance |
| $ 50,000.00 | Amount Erie owed to Tunny according to the UIM coverage |

Based upon these calculations, Erie owed to Tunny a total of $50,000.00 according to the terms of the UIM policy. Before the summary judgment hearing, Erie had paid $35,154.12 to Tunny. After the summary judgment hearing, Erie was ordered to pay a total of $6,250.00 plus interest in the amount of $664.38 to Tunny. However, as we have concluded, the trial court erred in allowing Erie to reduce the

4. Some may claim that our treatment of the worker's compensation payment as being retained by the injured employee even after the worker's compensation carrier has been reimbursed for its lien and reducing the third-party settlement by the amount of the reimbursement is a distinction without a difference. Numerically it may be, but for the sake of understanding who actually receives the benefits of the third-party settlement and in calculating what may be charged to the injured employee for the sake of the UIM reduction clause, such distinction is critical.

policy limit by the amount of the attorney fees which GRE owed to Skiles. Consequently, Erie, after subtracting its payment of $35,154.12, owes Tunny a total of $14,845.88. Therefore, we remand to the trial court to amend its judgment in favor of Tunny to the amount of $14,845.88 plus interest, to be calculated by the trial court.

Our resolution of this case requires us to address one final issue which may arise because of our holding. In *Spangler, Jennings & Dougherty P.C.*, our Supreme Court stated that the attorney's entire fee for a third-party action should be no more than a percentage of the whole third-party judgment or settlement. 729 N.E.2d at 123. We assume, for example, that this statement means that if the contract between the attorney and the injured claimant states that the attorney will represent the claimant for 25% of the settlement or judgment and the total award is $100,000.00, which includes the amount to be reimbursed to the insurer for benefits already paid, the attorney should receive no more than $25,000.00 as his fee. However, a problem arises when the insurer must pay a fee which is greater than the percentage which the injured claimant has contracted to pay the attorney. This is so because the injured claimant will pay the agreed percentage on his portion of the settlement but the worker's compensation carrier will pay the statutorily mandated 33⅓% for the amount the attorney recovers in protecting the worker's compensation carrier's lien. Under this scenario, this amount will always exceed the amount the attorney would receive if the attorney received payment on the entire settlement at the contracted for percentage.

 The statute at issue in *Spangler, Jennings & Dougherty P.C.* was I.C. § 22–3–2–13, the worker's compensation statute at issue in this case. In footnote 11 of the *Spangler, Jennings & Dougherty P.C.*

opinion, our Supreme Court cited *Lehman* and one additional case to support its statement. Both of the cases upon which the Supreme Court relied address the issue of attorney fees from the perspective of the more general insurance subrogation statute, formerly codified at I.C. § 34–4–41–2, and now found at I.C. § 34–53–1–2. As we previously discussed, the more general insurance subrogation statute ties the attorney's collection from the insurer to the percentage upon which the injured claimant and the attorney agree. However, the worker's compensation statute makes no such link between the agreement entered into by the injured employee and the attorney and the amount which the worker's compensation carrier must pay to the attorney. Therefore, when calculating attorney fees under I.C. § 22–3–2–13, one should not look at the ultimate percentage which the attorney collects, but instead, one should be concerned that the attorney does not receive a percentage of the reimbursement to the worker's compensation carrier plus a percentage from the injured employee on the amount which is reimbursed to the worker's compensation carrier. *See Spangler, Jennings & Dougherty P.C.*, 729 N.E.2d at 123 (stating that an attorney should not receive a fee on the whole worker's compensation award in addition to a percentage of the third-party judgment he should receive). In this case, the agreement between Tunny and Skiles prevents such a double recovery.

The trial court's granting of summary judgment is affirmed but the cause is remanded to the trial court to modify the amount awarded to Tunny to $14,845.88 plus interest.

BAKER and DARDEN, JJ., concur.