HOME OWNERS' LOAN CORPORATION v. HENSON ET AL.

[No. 27,465. Filed November 19, 1940.]

*Robert L. Mellen,* of Bedford; and *Walter W. Houppert,* of Indianapolis, for appellant.

*Clarence Donavan,* of Bedford, for appellees.

ROLL, C. J.—On May 28, 1934, appellant loaned to appellee, Lois Ramsey, now Lois Ramsey Henson, the sum of $1,110.93, to pay off certain existing liens against real estate located in Lawrence County, Indiana. Lois Ramsey Henson represented to appellant that the real estate was her individual property. The loan was evidenced by a promissory note for $1,110.93, executed by appellee, Lois Ramsey Henson, and payable to appellant herein. At the time said note was executed and delivered, the appellee, Lois Ramsey Henson executed a mortgage upon the above mentioned real estate to secure the payment of said note. After this loan was so made and the proceeds thereof used in paying and discharging said existing liens, appellant learned that Eathel Ramsey, former husband of Lois Ramsey Henson, died intestate on August 8, 1933, the owner of said mortgaged real estate; that there was no administration of his estate, and that he left as his sole and only heirs at law, Lois Ramsey Henson, his widow, Marie Ramsey, now Marie Ramsey Deitz, Raymond Ramsey, Eloise Ramsey, Bettie Ramsey, and Robert Ramsey, his five minor children, and that said widow and said children owned said mortgaged real estate at the time said loan was made and said mortgage executed; that Marie Ramsey thereafter married Louis Deitz. On the failure and refusal of the said Lois Ramsey Henson to pay the note according to its terms, appellant filed its complaint against said widow and her second husband, and against said five children and the husband of the married daughter on said note and mortgage seeking a personal judgment against Lois

Ramsey Henson on her said note, and to foreclose said mortgage against her as maker and against her children under the doctrine of equitable subrogation. Lois Ramsey Henson and Joshua Henson, her present husband, did not appear and was therefore defaulted. A guardian ad litem was appointed for the infant defendants who filed answers in general denial.

The evidence was stipulated and there is no conflict. The only question presented is purely a question of law. The trial court rendered judgment in favor of appellant and against appellee, Lois Ramsey Henson, in the sum of $1,503.78, being the principal amount of said note, interest, advancements and attorney fees together with cost; that the appellant was entitled to foreclose its said mortgage against Lois Ramsey Henson and her husband Joshua Henson and to a sale of her undivided one-third interest in said real estate to pay and satisfy said indebtedness. The trial court found in favor of the other defendants and against the appellant, and found that the appellant was not entitled to a decree of foreclosure against their interests in said mortgaged real estate. Judgment was rendered accordingly.

Appellant's motion for a new trial was overruled, and the overruling of said motion is the only error assigned upon appeal.

The facts necessary to understand the question here presented are briefly stated as follows: Eathel Ramsey became the owner of the real estate in question on November 20, 1930, and took possession thereof. On November 22, 1930, Eathel Ramsey borrowed of the Fidelity Finance Corporation of Bedford, Indiana, the sum of $500.00, and executed his note for said amount, payable to the said Fidelity Finance Corporation, and to secure the payment of said note; the said Eathel Ramsey and Lois Ramsey, his wife, executed to the

Fidelity Finance Corporation their mortgage upon said real estate, which mortgage was duly recorded. In 1930, there existed valid street assessments against said property in the sum of $272.04, and an additional assessment of $274.01, for the construction of a sewer, and by the provisions contained in the deed, the said Eathel Ramsey assumed and agreed to pay the above mentioned street and sewer assessment liens. Eathel Ramsey died intestate, a resident of Lawrence County, Indiana, on August 8, 1933, leaving as his sole and only heirs at law his widow and five minor children above named. There was no administration of his estate and all of his indebtedness, including expenses of last sickness, funeral and burial, were fully paid and discharged except the balance due on each of the above-mentioned liens and the taxes on said real estate. Said widow and children continued to live in and occupy said real estate as their home until the present time, and did not pay anything on said liens and taxes except as such were paid from the proceeds of the loan made by appellant.

Thereafter, Lois Ramsey made written application to appellant for a loan on said real estate in the sum of $1,110.93, stating in her application that she was the sole owner of the real estate; that the mortgage above mentioned herein was due and that the street and sewer assessments were past due, and that the taxes against said real estate were delinquent, and that the lienholders were threatening to and would foreclose said liens; that she was making application for a loan to obtain money with which to pay off said lien and save said home from being sold on foreclosure.

The application was made in accordance with the rules and regulations of the Home Owners' Loan Cor-

poration, and she furnished and delivered to the local offices of appellant an abstract of title of said real estate. Appellant inspected said real estate and the dwelling thereon and found that the dwelling thereon was then in a bad state of repair, and was in need of a new roof, porch repair, outside paint, and repair to the foundation. Appellant granted the loan on condition that the above-mentioned repairs be made and paid for from the proceeds of said loan, and that the balance due on the above-mentioned mortgage, street assessment lien, sewer assessment lien, and back taxes be paid from the proceeds of said loan. All of which was agreed to and accepted by the said Lois Ramsey. On the day said loan was completed there was due and payable on the liens herein mentioned, the following: Fidelity Finance Corporation balance due on its note and mortgage $219.10; "M" street assessment lien, $267.72; sewer assessment lien, $269.04; taxes $56.77; contractors, mechanics, materials, and labor in making repairs to dwelling, $267.70; or a total of $1,080.33.

At the time Lois Ramsey made her application for the above-mentioned loan she executed an affidavit to the effect that at the time the mortgage to the Fidelity Finance Corporation was made, Eathel Ramsey and Lois Ramsey were husband and wife, that they were the owners of the real estate here in question, that on July 8, 1933, Eathel Ramsey died and that Lois Ramsey had not since married and was then a single woman. The abstract of title furnished to appellant was examined by the examining attorney for the Home Owners' Loan Corporation and after examining said abstract, certified to appellant that Lois Ramsey was the owner of said real estate subject to the above-mentioned liens. Thereafter the loan was made in an amount sufficient

to pay all of said liens and the additional sum of $30.00 to cover cost of loan, including abstract fee, examination of said abstract, property inspection fee, and the cost of recording the mortgage which made a total of $1,110.93. Upon the above facts the court rendered the judgment as heretofore stated.

Appellant contends that, under the complaint and the facts as above set out, it was entitled to be subrogated to the rights of the above lienholders, and that the findings and decision of the court in favor of the children was not sustained by sufficient evidence.

It will be observed from the record that the interests of no third party has intervened, and that the parties to this litigation have not changed their positions by reason of the several transactions above set out. The real estate in question was subject to the above-mentioned liens, and the interest of the minor children of Mr. and Mrs. Ramsey could and would have been subjected to sale to make assets to pay the same. Appellant was asked to loan the money for the very purpose of freeing the real estate of these liens. The loan was made to Lois Ramsey, now Lois Ramsey Henson, under a mistake of fact. She represented in her application to appellant that she was the sole owner of the mortgaged real estate. While it is true that the abstract of title showed that Lois Ramsey was not the sole owner, and while it may be true that the attorneys who examined the abstract for appellant were either negligent or incompetent in making such examination; we do not think these facts are controlling.

As we view the record, two questions are presented: First, was appellant a mere volunteer, and; second, will equity give relief in case of a mistake of fact? If appellant, in making the loan, was acting as a mere volunteer, it is not entitled to subrogation, and if equity

will not afford relief in case of a mistake, then appellant must suffer the loss.

The right of subrogation is not founded upon contract, expressed or implied, but upon principles of equity and justice, and includes every instance in which one party, not a mere volunteer, pays a debt for another, primarily liable, and which, in good conscience, should have been paid by the latter. This principle of law has been stated and restated in this jurisdiction and in many others, as will be observed from the cases cited in *Davis* v. *Schlemmer, Administrator* (1898), 150 Ind. 472; and *Warford* v. *Hankins* (1898), 150 Ind. 489. If appellant had an interest in the real estate in question to protect, or if, from any reason, appellant might have been compelled to pay the existing liens on the questioned real estate, or if appellant had such an interest in the real estate which required it to pay said liens, it could not be said that appellant would have been a volunteer in paying off the pre-existing mortgage and liens. Appellant had no interest in this real estate to protect. It was under no obligation in any way to advance the money to pay off said liens.

Appellee Lois Ramsey Henson did request appellant to make this loan for the purpose of liquidating said liens and did propose to execute a mortgage upon the real estate as security for the loan.

One learned writer upon this subject said:

"The doctrine is also justly extended, by analogy, to one who, having no previous interest, and being under no obligation, pays off the mortgage, or advances money for its payment, at the instance of a debtor party and for his benefit; such a person is in no true sense a mere stranger and volunteer." 3 Pomroy's Eq. Jur. § 1212.

It was said in *Wilson* v. *Brown,* 13 N. J. Eq. 277:

> "To entitle a party who pays the debt of another
> to the rights of the creditor by subrogation, the
> debt must be paid at the instance of the debtor,
> or the person paying it must be liable as surety
> or otherwise for its payment."

In the case of *Gans* v. *Thieme,* 93 N. Y. 225, the rule
is laid down as follows:

> "A volunteer cannot acquire either an equitable
> lien or the right to subrogation, . . . but one
> who, at the request of another, advances his money
> to redeem or even to pay off a security in which
> that other has an interest, or to the discharge of
> which he is bound, is not of that character, and in
> the absence of an express agreement one would be
> implied, if necessary, that it shall subsist for his
> use, and it will be so enforced. But the doctrine
> of substitution may be applied although there is no
> contract, express or implied. It is said to rest 'on
> the basis of mere equity and benevolence' (*Cheese-
> borough* v. *Millard,* 1 John Ch. 409; 1 Story's
> Equity Jurisprudence, § 493), and is resorted to for
> the purpose of doing justice between the parties."

In the case of *Warford* v. *Hankins, supra,* this court
said:

> "This doctrine is also supported by the cases
> which hold that when a third party, at the request
> of a debtor, loans the money to him to pay a debt
> secured by mortgage or other lien, under an agree-
> ment that he shall have a mortgage on the same
> real estate to secure him in such loan, and after
> the same is paid the debtor refuses to give the
> mortgage, or if given it proves invalid or ineffectual
> for any reason, or if there are intervening liens of
> which the person making the loan or payment had
> no notice or knowledge, such person is entitled to
> be subrogated to the mortgage or other lien secur-
> ing the debt paid." See cases cited.

The case of *Johnson* v. *Barrett* (1889), 117 Ind.
551, is a case very similar in facts to the case at bar.

In that case, George M. Barrett and Mary L. Barrett, his wife, executed to James A. Cooper a mortgage on certain real estate to secure the payment of a loan of $3,000.00. Afterwards, George M. Barrett conveyed the real estate to his wife, Mary Barrett, and caused said deed to be recorded. The note was not paid and Cooper, the mortgagee, brought suit on said note and obtained judgment on the indebtedness and a decree of foreclosure of the mortgage. A short time after the judgment and order of foreclosure was entered, Mary L. Barrett died intestate leaving the said George M. Barrett, her husband, and minor children as her only heirs at law. George M. Barrett afterwards requested appellant Johnson to pay off and discharge the judgment and decree of foreclosure rendered against him as above stated, and to take from him a new note and another mortgage on the same land to secure the repayment of the amount which would be required to pay off such judgment and decree. At the time, Barrett represented to Johnson that he was the owner of the land. Barrett did not pay Johnson's note and Johnson brought suit and sought a foreclosure of the mortgage against Barrett and his minor children. The objection urged by George M. Barrett in that case was that George M. Barrett had no authority to enter into any contract concerning said land, or to execute to the plaintiff a mortgage upon more than one-third of the tract of land in controversy. The trial court held, as did the trial court in this case, that the mortgage given by the mortgagor could not and would not affect the interests of the minor children. Johnson, in that case, as appellant, in this case, contended that under the doctrine of subrogation he was entitled to a decree of foreclosure as against the minor heirs. In passing upon the question, this court said:

"Subrogation is the substitution of another person in place of a creditor, so that the person substituted will succeed to all the rights of the creditor having reference to the debt due. him. It is independent of any merely contractual relations between the parties to be affected by it, and is broad enough to include every instance in which one party is required to pay a debt for which another is primarily answerable, and which, in equity and good conscience, ought to be discharged by the latter.

"Where a mortgage is executed to raise money to discharge a prior incumbrance, and the money is so applied, the mortgagee becomes entitled to be subrogated to the rights of the prior incumbrancer when such a subrogation is made necessary for the better security of his mortgage debt. *Gilbert* v. *Gilbert*, 39 Iowa, 657.

"When a person has been required to pay, and has accordingly paid, a mortgage executed by another, he is entitled to be subrogated to the rights of the mortgagee, and to be treated as the assignee of the mortgage, notwithstanding the mortgage itself may have been cancelled and the mortgage debt discharged. In such a case the payment of the mortgage debt will operate as a discharge of the mortgage, or in the nature of an assignment of it, as may best serve the purposes of justice and the reasonable intent of the parties most interested."

In *Union Mortgage Trust Co.* v. *Peaters* (1895), 72 Miss. 1058, it was said:

"One who, at the instance of the debtor, advances money to be used by the debtor in the payment of a prior security, is not a stranger or an intermeddler in his affairs."

So we conclude that appellant was not a volunteer or an intermeddler such as will preclude its right to subrogation.

As to the second question; will equity under the facts presented, relieve a party from an undue burden occasioned by a mistake of facts?

In *Cobb* v. *Dyer* (1879), 69 Maine 494, a mortgagee had paid off a mortgage on certain lands, being at the time in ignorance of an outstanding debt and, on discovery of the existence of such debt, he asked to be subrogated to the rights of said mortgagee, basing his claim for relief upon his mistake as to the existence of such outstanding debt. The court allowed subrogation and said:

"Mistake is one of the fundamental grounds of equity jurisdiction."

In the case of *Warford* v. *Hankins, supra,* there was a mistake of fact; yet the court granted relief.

In the case of *Johnson* v. *Barrett, supra,* subrogation was allowed. As pointed out above there was clearly a mistake of fact. Barrett represented to Johnson that he was the sole owner of the real estate, when in fact he was the owner of but one-third thereof, and his minor children were the owners of the other two-thirds, but the court held that equity and justice would not permit appellee's children to profit unjustly at the expense of Mr. Johnson, and permitted appellant to be subrogated to the rights of the prior lienholder.

It will be noted in the case at bar that unquestionably appellant herein made the loan to appellee Henson under a mistake of fact. Appellee, as well as appellant, no doubt honestly believed that Mrs. Henson was the sole owner of the real estate here in question. To hold that the interest of the minor children in the real estate herein was freed from any liability and to deny appellant the right of subrogation would permit said minor children to be unjustly enriched at the expense of appel-

lant. A court of equity and good conscience will not permit this where the rights of third parties are not effected.

> In *First Nat. Bank* v. *Moore* (1928), 88 Ind. App. 189, 163 N. E. 602, the court in speaking of the ■ doctrine of subrogation, quoted with approval the following excerpt from *Chaffe and Bro.* v. *Oliver* (1882), 39 Ark. 531;

> "It rests upon the maxim that no one shall be enriched by another's loss, and may be invoked wherever justice and good conscience demand its application, in opposition to the technical rules of law, which liberate securities with the extinguishment of the original debt."

Under the authorities above cited, and many others that might be added, we hold that appellant is not a stranger or a volunteer, and that it is entitled to subrogation to the extent of the amount of the liens upon the real estate which was paid off with the money advanced by it. But it is not entitled to subrogation as to the cost of the loan in the sum of $30.00.

The cause is reversed with instruction to the trial court to restate its conclusions of law and to decree appellant subrogated to the valid liens herein mentioned and to grant appellant foreclosure against all of the real estate mentioned in the complaint and against all of the appellees herein.

NOTE: Reported in 29 N. E. (2d) 873.