**FIRST FEDERAL SAVINGS BANK OF WABASH, Plaintiff–Appellant,**

v.

**UNITED STATES of America, Defendant–Appellee.**

No. 96–3364.

United States Court of Appeals, Seventh Circuit.

Argued May 20, 1997.

Decided June 30, 1997.

Patricia McCrory, A. Donald Wiles, II (argued), Harrison & Moberly, Indianapolis, IN, for Plaintiff–Appellant.

Kenneth L. Greene, Curtis C. Pett (argued), Department of Justice, Tax Division, Appellate Section, Gerald H. Parshall, Jr., Department of Justice, Tax Division, Washington, DC, for Defendant–Appellee.

Before CUMMINGS, FLAUM, and EVANS, Circuit Judges.

FLAUM, Circuit Judge.

When a bank loans money to extinguish a first mortgage in certain property and secures the loan with a new mortgage in the property but fails, due to the negligence of its title insurer, to discover an intervening tax lien, may the bank rely on the doctrine of equitable subrogation to establish the priority of its lien over that of the government? Applying Indiana law to the circumstances of this case, we agree with the district court that the plaintiff, First Federal Savings Bank of Wabash, is not entitled to step into the shoes of the first mortgagee. Accordingly, we affirm.

**I.**

The relevant facts are not complicated. In February 1987, Danny and Janet Lantz borrowed $50,000 from First National Bank of Elkhart, Indiana. As security for the loan, the Lantzes gave First National a mortgage in a piece of property located in Kosciusko County, Indiana. First National, in turn,

assigned the mortgage to the Federal Home Loan Mortgage Corporation ("FHLMC"), which duly recorded the assignment on February 8, 1988. Shortly thereafter, on February 19, the IRS recorded in Kosciusko County a notice of tax lien against the Lantzes in the amount of $51,226.95. As of February 19, then, FHLMC's interest in the Kosciusko property had priority over that of the government.

More than four years later, the Lantzes borrowed $100,000 from First Federal, which secured this loan with a mortgage in the Kosciusko property. Of the loan amount, First Federal paid $47,917.37 to extinguish the initial mortgage originally held by First National. First Federal recorded its mortgage on September 25, 1992, and the first mortgage was released three days later. Although First Federal obtained title insurance, the insurer failed to discover the tax lien, and it is undisputed that the bank had no actual notice of the government's interest in the property.

In 1995, after the IRS sought to foreclose on its lien, First Federal brought this wrongful levy action pursuant to 26 U.S.C. § 7426(a)(1).[1] The bank argued that it was entitled under Indiana law to be equitably subrogated to the rights of the first mortgagee. In other words, to the extent that its loan had been used to pay off the prior mortgage, First Federal sought to step into the shoes of the first mortgagee and thereby to leap ahead of the government in priority. The district court, however, determined that the equities did not weigh in First Federal's favor. Observing that First Federal had notice of the prior, $50,000 mortgage, the court reasoned that the bank "should have been on guard when the Lantzes borrowed a second mortgage twice as large as the first." In addition, the title insurance company had been negligent in failing to discover the tax

lien while the IRS "ha[d] done nothing but properly file a tax lien and wait patiently to collect." The district court therefore denied First Federal's motion for summary judgment and granted the government's motion to dismiss. On First Federal's motion for reconsideration, the court distinguished *Mort v. United States*, 86 F.3d 890 (9th Cir.1996), a case upholding a second mortgagee's right to equitable subrogation despite the presence of an intervening federal tax lien, on the ground that *Mort* involved unsophisticated, non-commercial lenders.[2] Accordingly, the district court denied the motion for reconsideration. First Federal now appeals.

## II.

The parties do not agree on the appropriate standard of review. Not surprisingly, the government would have us review the court's equitable determination for abuse of discretion, while First Federal, treating the court's ruling as any other grant of summary judgment, urges us to exercise our plenary review. Although there is authority to support the government's position, *see Mort*, 86 F.3d at 892; *United States v. Baran*, 996 F.2d 25, 29 (2d Cir.1993), the choice of a standard has no impact on our decision. Under either the government's or First Federal's proposed standard, we would affirm the district court's judgment.

■■■ Because section 6323(i) of the Internal Revenue Code directs that where local law subrogates a person to the rights of another, that person "shall be subrogated" for purposes of a federal tax lien, 26 U.S.C. § 6323(i), the question presented by this appeal demands a foray into Indiana law. Unfortunately, Indiana law provides no ready answer to our query. In Indiana, equitable subrogation "[is founded] upon principles of equity and is applicable in every instance in

---

**1.** In relevant part, § 7426(a)(1) provides as follows:

 If a levy has been made on property or property has been sold pursuant to a levy, any person (other than the person against whom is assessed the tax out of which such levy arose) who claims an interest in or lien on such property and that such property was wrongfully levied upon may bring a civil action against

the United States in a district court of the United States....

 26 U.S.C. § 7426(a)(1).

**2.** Actually, the *Mort* plaintiffs were assignees of the second lender, but that detail isn't important, as the court of appeals deemed the assignees to be "vested with all the powers and rights of the assignor." 86 F.3d at 894.

which one party, not a mere volunteer, pays the debt of another which, in good conscience, should have been paid by the one primarily liable." *Loving v. Ponderosa Systems, Inc.,* 479 N.E.2d 531, 536 (Ind.1985); *see also Home Owners' Loan Corp. v. Henson,* 217 Ind. 554, 29 N.E.2d 873, 875 (1940). Although the doctrine is to be applied liberally, *Loving,* 479 N.E.2d at 536–37 (quoting 73 Am.Jur.2d § 7 (1974)), and a party's mistake does not necessarily foreclose its reliance on equitable subrogation, *Henson,* 29 N.E.2d at 875, it is also clear that a court must decide whether to invoke the doctrine based on the circumstances of the particular case, *see Ticor Title Ins. Co. of Cal. v. Graham,* 576 N.E.2d 1332, 1338 (Ind.Ct.App.1991). Beyond these rather broad parameters, we are left to chart our own course, for the parties have been unable to unearth an Indiana case that does not differ in some material respect from the case now before us.

It is also not obvious at first glance where the equities lie. On the one hand, although it may be imprecise to characterize the government's elevation to first lienholder as a windfall, it is true that applying equitable subrogation would not make the government worse off than it was prior to the release of the first mortgage. *See Progressive Consumers Fed. Credit Union v. United States,* 79 F.3d 1228, 1237 (1st Cir.1996) ("The point is that the government could not have anticipated its current priority status because from the outset its 1988–1990 liens were clearly junior to MSFCU's 1987 mortgage lien."). In a case where the original mortgagee has provided refinancing, *see, e.g., id.,* or where third-party purchasers suddenly find their home encumbered by a tax lien, *see, e.g., Han v. United States,* 944 F.2d 526 (9th Cir.1991), this factor may be sufficient to tip the scale in favor of equitable subrogation. On the other hand, as a sophisticated lender with no use for the mortgaged property other than as collateral, First Federal was able to obtain title insurance to contract against the risk of errors such as the one that occurred here. In this regard, it bears noting that the title insurer, whose negligence apparently caused

this mess in the first place, presumably must bear the loss if we affirm the district court.

In the district court's view, the fact that First Federal is a commercial lender was dispositive. This focus upon a party's level of sophistication has at least some basis in Indiana law. *See Universal Title Ins. Co. v. United States,* 942 F.2d 1311, 1317 (8th Cir. 1991) (discussing *Lawyers Title Ins. Corp. v. Capp,* 174 Ind.App. 633, 369 N.E.2d 672, 674 (1977)).

We believe that there is an additional factor that weighs against applying equitable subrogation on the facts of this case. In response to questioning at oral argument, counsel for First Federal acknowledged that the bank's title insurer was paying the costs of this litigation. This acknowledgment lends credence to the government's argument that the title insurer, and not First Federal, is the real party in interest here. *Cf. Mort,* 86 F.3d at 895 & r. 5 ("There is no evidence of collusion between the Morts and [the title insurer]."). Significantly, Indiana courts have been more reluctant to invoke the doctrine of equitable subrogation in cases where to do so would benefit a negligent title insurer. "Subrogation," one Indiana court has explained,

> is not an absolute right, but one which depends upon the equities and attending facts and circumstances of each case. It would be a gross misapplication of the doctrine of subrogation were we to hold that its cloak settles automatically upon one who has simply made a mistake, when it is a commercial transaction involving a consideration.... Further, it is difficult to think of a situation in which a title insurance company could not claim unjust enrichment as to someone who might inadvertently benefit by their negligence. Either they insure or they don't. It is not the province of the court to relieve a title insurance company of its contractual obligation.

*Lawyers Title Ins. Corp.,* 369 N.E.2d at 674 (quoting *Coy v. Raabe,* 69 Wash.2d 346, 418 P.2d 728 (1966) (internal quotations omitted)). This reasoning controls the outcome of this case.[3]

---

3. Any remaining doubt we might have as to how    an Indiana court would rule is dispelled by our

The judgment of the district court is AF-FIRMED.

own assessment of the equities. We can assume that the title insurer, a profit maximizer like any other business, would agree to pay First Federal's legal fees only if the expected savings, in the form of reduced overall payouts resulting from successful litigation, exceeded the legal costs of pursuing these actions. The flip side of this calculus is that the government's overall recovery in these cases is reduced both by adverse judgments and by the costs of additional litigation. In other words, the fee-paying agreement amounts to an attempt by the insurer to shift some of its expected payout cost to the public fisc. It may be that a portion of this savings is passed along to the bank in the form of reduced insurance costs. Either way, we are not inclined in this case, where an equitable remedy is sought, to elevate form over substance by disregarding the insurer's interest in the outcome of this litigation. We note, however, that nothing in this opinion should be read to preclude a separate action against the Lantzes based on the terms of the mortgage agreement and the title insurance policy.