**Ronald OSTERMAN and Norwest Mortgage, Inc., Appellants–Defendants,**

v.

**Ronald BABER, Appellee–Plaintiff.**

No. 02A03–9805–CV–238.

Court of Appeals of Indiana.

July 28, 1999.

David P. Irmscher, Lisa M. Dillman, Baker & Daniels, Fort Wayne, Indiana, Attorneys for Appellants.

Terry L. Cornelius, Cornelius & Weingartner, Fort Wayne, Indiana, Attorney for Appellee.

## OPINION

SULLIVAN, Judge

Appellants, Ronald Osterman and Norwest Mortgage, Inc. (Norwest), appeal the denial of their summary judgment motion and the grant of Appellee, Ronald Baber's (Baber) summary judgment motion.

We affirm.

The events leading to this appeal are as follows:

(1) Alan G. Orr and Vona I. Orr (Orrs)[1] were the owners of real estate (the property) in Fort Wayne, Indiana. At that time, Lincoln National Bank & Trust Company of Fort Wayne (Lincoln) maintained two separate mortgage liens on the property.

(2) January 17, 1995: In preparation for closing on the sale of the property from the Orrs to Osterman, a title search was conducted by the Columbia Land Title Company (Columbia). At that time, the search revealed no liens on the property. In reliance upon the title search, Osterman obtained a title insurance commitment on the property through Fidelity National Title Insurance Company (Fidelity), effective January 9, 1995. The title policy was to insure Osterman in the amount of $67,-900.00.

(3) January 24, 1995: Baber obtained a default judgment against the Orrs, cause number 02D01–9412–CP–1862, totaling $183,304.70. On the title insurance commitment, there is a handwritten and undated notation reading: "see new judgment against Orr—02D01–9412–CP–1862." There are several Xs superimposed upon the notation and there is a question mark as well as "ok per Stan" written beside the notation. There is no evidence in the record as to the identity of Stan.[2]

(4) February 9, 1995: Baber's judgment lien was recorded.

(5) February 16, 1995: Osterman closed on the property and executed a note in favor of First Security Savings Bank (First Security) in the amount of $66,450.00, secured by a mortgage on the property, which note and mortgage were assigned to Norwest. Norwest paid $41,511.32 of the $66,450.00 to Lincoln to satisfy the existing mortgage liens and to secure a senior lien upon the property. At closing, the Orrs executed a warranty deed and closing affi-davit, indicating that there were no liens in existence against the property.

On appeal, Norwest claims that, at the time of closing, it was unaware of the default judgment against the Orrs and that we should apply the doctrine of equitable subrogation[3] to "prevent Mr. Osterman from remaining liable on his note to Norwest even after he loses the [p]roperty and Norwest from losing the money it paid to satisfy the pre-existing liens on the [p]roperty." Appellant's Brief at 6. Finally, Norwest argues that its rights should be subrogated to those of Lincoln to prevent Baber from "enjoy[ing] a windfall at the expense of innocent third parties." Appellant's Brief at 22.

Summary judgment is appropriate where there are no genuine issues of material fact, and one party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C). In reviewing the grant of summary judgment, we use the same standard as the trial court in deciding whether to affirm the trial court's decision. *Maudlin v. Hall* (1998) Ind. App., 700 N.E.2d 469. We may affirm the trial court's ruling upon any theory which is supported by the evidence of record. *Grubb v. Childers* (1998) Ind.App., 705 N.E.2d 180, *reh'g denied.* In this instance, Norwest must carry the burden of persuading us that the trial court's decision denying it subrogation was erroneous. *Id.*

Equitable subrogation is applicable when a "party, not [acting as] a mere volunteer, pays the debt of another which, in good conscience, should have been paid by the one primarily liable." *Loving v. Ponderosa Sys., Inc.* (1985) Ind., 479 N.E.2d 531, 536 (citing *National Mut. Ins. Co. v. Maryland Cas. Co.* (1963), 136 Ind.App. 35, 41, 187 N.E.2d 575, 578, *trans. denied* ). At that time, if equity permits, the party who has paid the creditor, or subrogee, becomes entitled to the legal rights and security originally held by the creditor. "Subrogation depends upon the equities and attending facts and circumstances of each case." *Ticor Title Ins. Co. v. Gra-*

---

1. The Orrs were party defendants below but are not active participants in this appeal.

2. Despite continuing and major advancements in the use of modern technology, the actual docu-ment could not be "scanned" so as to electronically transmit an exact reproduction.

3. Equitable subrogation is also known as legal subrogation.

*ham* (1991) Ind.App., 576 N.E.2d 1332, 1338, *trans. denied.* It is "a highly favored doctrine, which is to be given a liberal application." 73 AM.JUR.2D *Subrogation* § 7 (1974) (citations omitted). However, while ordinary negligence will not bar the application of subrogation, "[t]he remedy will not be allowed where the party is guilty of culpable negligence." *Ticor, supra* at 1338. Thus, a party who pays the debt of another may be substituted in place of the other if he was not acting (1) as a mere volunteer and (2) with "culpable negligence."

 Under Indiana common law, there are no degrees of negligence. *South Eastern Indiana Natural Gas Co., Inc. v. Ingram* (1993) Ind.App., 617 N.E.2d 943. It is therefore difficult, at best, to place the term "culpable negligence" within an appropriate frame of reference. Suffice it to say, however, we conclude that the term contemplates action or inaction which is more than mere inadvertence, mistake or ignorance. 83 C.J.S. Subrogation § 6 (1953).

 While we have found no Indiana cases dispositive of the issues in this case, we find guidance from other jurisdictions. In *Universal Title Co. v. United States* (1991) 8th Cir., 942 F.2d 1311, the court refused to allow a title insurance company to be equitably subrogated to the rights of a prior mortgagee, in part because of its failure as a sophisticated professional enterprise to discover an intervening Internal Revenue Service tax lien.[4] The court in *Universal Title* noted its belief that Minnesota courts "impose stricter standards on professionals than lay persons in assessing whether mistakes are 'excusable' for purposes of the doctrine of legal subrogation, especially when the professional relationship arises out of a commercial transaction involving consideration." *Id.* at

1317. Finding that other jurisdictions also impose stricter standards in similar contexts, the Eighth Circuit, quoting *Coy v. Raabe* (1966), 69 Wash.2d 346, 418 P.2d 728, 731, further noted that, "[i]t would be a gross misapplication of the doctrine of subrogation were we to hold that its cloak settles automatically upon one who has simply made a mistake, when it is a commercial transaction involving a consideration."[5] *See also Lawyers Title Ins. Corp. v. Capp* (1977) 174 Ind.App. 633, 369 N.E.2d 672, 674–75 (quoting *Coy, supra* at 731, but limiting holding to "unusual factual setting" of the particular case), *trans. denied.*

 Furthermore, we conclude that more than a simple mistake was made in this instance. Norwest failed to affirmatively protect its rights despite actual knowledge of Baber's lien. As a panel of this court recently explained:

> Whatever fairly puts a reasonable, prudent person on inquiry is sufficient notice to cause that person to be charged with actual notice, where the means of knowledge are at hand and he omits to make the inquiry from which he would have ascertained the existence of a deed or mortgage. Thus, the means of knowledge combined with the duty to utilize that means equates with knowledge itself.

*Keybank Nat. Ass'n v. NBD Bank* (1998) Ind.App., 699 N.E.2d 322, 327 (citation omitted). The same reasoning applies to liens which are recorded. *See also Altman v. Circle City Glass Corp.* (1985) Ind.App., 484 N.E.2d 1296, *trans. denied.* Clearly, the notation "see new judgment against Orr . . ." written at the bottom of the title insurance commitment gave Norwest, a sophisticated lender, inquiry notice. As well, Norwest cer-

---

4. The court compared the case to one from Minnesota, wherein a stricter standard of negligence was applied to a bank. In likening the two cases, the court concluded that the same standard would apply both to banks and title insurance companies, in that "both are professional enterprises experienced in the area of secured transactions involving real property." *Universal Title, supra* at 1317.

5. In keeping with our acknowledgment that there are no degrees of negligence, recognition of

the concept of a "stricter standard" for professionals may be found in the principle that "[t]he duty, when found to exist, is the duty to exercise reasonable care under the circumstances. The duty never changes. However, the standard of conduct required to measure up to that duty varies depending upon the particular circumstances." *Stump v. Indiana Equip. Co., Inc.* (1992) Ind.App., 601 N.E.2d 398, 402, *trans. denied.*

tainly had the means to insist upon an updated title search to ensure that it would be the most senior lien against the property before it extinguished the Lincoln mortgages. By not having done so, Norwest put its own interests at risk.

■ There are no cases in Indiana pertaining to whether a party may be subrogated to another's rights when there is actual knowledge of an intervening lien. The majority of jurisdictions continue to state that actual knowledge precludes the application of equitable subrogation, while constructive knowledge does not. See, e.g., Dodge City of Spartanburg, Inc. v. Jones (1995) S.C. Ct. App., 317 S.C. 491, 454 S.E.2d 918, 920, reh'g denied; Han v. United States (1991) 9th Cir., 944 F.2d 526, 530. Most of these courts reason that if subrogees have actual knowledge of an intervening lien, they must not have intended that their rights would be subrogated to those of the senior lienholders. However, there is an increasing trend to allow a party to subrogate where it is the intention of the parties that the subrogee will be subrogated to the senior lienholder's rights, despite actual knowledge of an intervening lien. See, e.g., Rush v. Alaska Mortgage Group (1997) Alaska, 937 P.2d 647; Chase Manhattan Bank, N.A. v. Miller (1998) V.I., 1998 WL 667790 (Not published in F.2d); see also RESTATEMENT (THIRD) OF PROPERTY § 7.6 (1997). However, we hesitate to adopt a bright-line rule in Indiana [6] and opt instead to take guidance from the Massachusetts Supreme Court which, in East Boston Sav. Bank v. Ogan (1998) Mass., 428 Mass. 327, 701 N.E.2d 331, declined to create a clear rule on the effect of the potential subrogee's knowledge in deciding whether equitable subrogation is appropriate. Rather, the court, as we now do here, balanced

the factor in its equitable analysis.[7] See also Lawyers Title Ins. Corp. v. Feldsher (1996) Cal.Ct.App., 42 Cal.App.4th 41, 49 Cal. Rptr.2d 542, 550, reh'g denied, review denied (holding that the party attempting to have rights subrogated having "actual knowledge of the crucial facts, combined with his negligence in allowing the transaction to close despite the absence of a subordination agreement, is the type of 'culpable and inexcusable neglect' which justifies denial of the doctrine of equitable subrogation under the overall circumstances of the case"). In applying the culpability factor to the facts of this case, we hold that in a commercial transaction, a prudent and sophisticated lender, having actual knowledge of an intervening lien, as well as the ability to avert resultant harm, would have ensured protection of its interests before extinguishing existing mortgage liens. Thus, we conclude that Norwest acted with culpability in failing to do so and is therefore not entitled to the protection of equitable subrogation.

■ Finally, Norwest argues that if we do not apply subrogation, Baber will gain a windfall unjustly and at the expense of innocent third parties. We disagree. We find the reasoning of Universal Title, supra, 942 F.2d at 1319, to be persuasive upon this issue. In that case, the court concluded that there was no windfall for the I.R.S. because it was to receive only that to which it was entitled—a full payment of its lien. Further, the court stated that, "[t]he doctrine of legal subrogation requires more than a showing that a junior lienholder will be placed in a better position than the lienholder would be in if legal subrogation applied." Id. at 1319 (citing Fidelity Nat'l Title Ins. Co. v. Dep't. of the Treasury (1990) 9th Cir., 907 F.2d 868, 871).[8] Baber is an innocent party, who did

---

6. If we were to follow the modern trend and conclude that the actual knowledge of a lien does not prevent the application of equitable subrogation, it is difficult to imagine under what circumstances we would find "culpability," which does preclude the application of equitable subrogation. See Ticor, supra, 576 N.E.2d at 1338.

7. The court in Ogan also declined to adopt a bright-line rule on the effect of the subrogee's culpability, also considering it as merely a factor in whether to grant the equitable relief prayed for. In contrast, in Indiana, "culpability" pre-

cludes the subrogation remedy, see Ticor, supra. Thus, we construe the knowledge element to be a factor in deciding whether the party requesting subrogation has been "culpable."

8. Cf. First Fed. Sav. Bank of Wabash v. United States (1997) 7th Cir., 118 F.3d 532 (applying Indiana law). The court in Wabash stated that the fact that an intervening lienholder may be in no worse position than it was before extinguishment of the senior lien if the court were to apply equitable subrogation may "tip the scale in favor of equitable subrogation" where the party seek-

not scheme in order to gain the full proceeds of the foreclosure sale. Further, his judgment against the Orrs was for $183,304.70, far more than the proceeds of the foreclosure which would be realized. Following the reasoning in *Universal Title*, we conclude that Baber will not be unjustly enriched by virtue of our decision in this case.[9]

The judgment denying equitable subrogation to Norwest is affirmed.[10]

RUCKER, J., and DARDEN, J., concur.

ing subrogation is not "a sophisticated lender with no use for the mortgaged property other than as collateral." *Id.* at 534. In that case, it was the lender seeking subrogation, and the court concluded that the lender had been able to obtain title insurance to "contract against the risk of errors." *Id.* The court further noted that the title insurance company, whose negligence had caused the "mess," would be the one to bear the loss, and, thus, upheld a district court decision that subrogation for the lender was not appropriate. *Id.*

9. We wish to emphasize further that cases of equitable subrogation are extremely fact sensitive, and, thus, each scenario requires its own careful balancing of the equities.

10. Because Norwest and Osterman present only the issue of equitable subrogation *vis a vis* payment of the Lincoln mortgage liens, we do not consider any issues or claims which might exist or arise as between Norwest and Osterman.