**WILSHIRE SERVICING CORPORATION, Appellant–Plaintiff,**

v.

**TIMBER RIDGE PARTNERSHIP and Marshall Underwood, Jr., et al., Appellees–Defendants.**

No. 53A05–0008–CV–336.

Court of Appeals of Indiana.

Feb. 23, 2001.

Rehearing Denied April 30, 2001.

Craig D. Doyle, Leeuw & Doyle, P.C., Indianapolis, IN, Attorney for Appellant.

**OPINION**

DARDEN, Judge

*STATEMENT OF THE CASE*

Wilshire Servicing Corporation (Wilshire) appeals from the trial court's entry

1. Wilshire filed the only appellate brief in this

of summary judgment in favor of Gerald H. Tarshes and Samuel Hennessee d/b/a Timber Ridge Partnership (collectively Timber Ridge), et al.[1]

We affirm.

*ISSUE*

Whether the trial court erred by granting summary judgment in favor of Timber Ridge.

*FACTS*

In February 1991, Lenora Underwood, Marshall Underwood, Jr., and Ollie Underwood, as mortgagors, executed a mortgage in the principal sum of $40,696 on property located at 7770 North State Road 37, Bloomington, Monroe County, Indiana. Also in February 1991, the mortgagee, Fleet Finance, Inc. (Fleet), recorded the mortgage with the Monroe County Recorder.

In July 1991, Timber Ridge obtained a judgment against Lenora Underwood and Marshall Underwood, but not Ollie Underwood, in the amount of $56,437.50. The judgment was affirmed by this court in a Memorandum Decision in 1992. Also, the judgment was recorded in Monroe County.

In October 1993, Lenora Underwood, Marshall Underwood, and Ollie Underwood, refinanced the mortgage with Fleet for the principal sum of $45,152.65. The refinanced mortgage was filed with the Monroe County Recorder on November 5, 1993. A notation on the original 1991 mortgage indicates that it was released in November 1993. Fleet assigned the refinanced 1993 mortgage to Wilshire in October 1996.

After the Underwoods failed to pay installments on the refinanced mortgage loan, Wilshire filed its complaint to foreclose the refinanced mortgage in June

action.

1998. Wilshire named as defendants the Underwoods, Timber Ridge, and the Indiana Department of State Revenue. Timber Ridge filed an answer, a counterclaim, and a cross-claim in July 1998 asserting its 1991 judgment lien as a priority over all other claims, liens, or interests. In August 1998, the Indiana Department of State Revenue was dismissed as a party after the Department disclaimed any interest or right in the real estate.

Wilshire and Timber Ridge both moved for summary judgment. In March 1999, the trial court granted summary judgment for Timber Ridge, thereby granting Timber Ridge's 1991 judgment a priority over Wilshire's refinanced 1993 mortgage. Wilshire initiated an appeal. During the appeal, Wilshire moved for leave to request Ind. Trial Rule 60(B) relief from the trial court. This court granted leave, and the appeal was terminated. The cause was remanded to the Monroe Circuit Court.

Thereafter, Wilshire filed its T.R. 60(B) motion in the trial court alleging that the summary judgment purported to grant Timber Ridge a priority over the entire property in question, but that the Timber Ridge judgment was entered against only Lenora Underwood and Marshall Underwood; thus, the judgment could not affect Ollie Underwood's interest in the property. Also, Wilshire reasserted its grounds for summary judgment.

 The trial court granted, in part, Wilshire's T.R. 60(B) motion and amended the order granting summary judgment. The trial court stated, *inter alia:*

> This Court's March 4, 1999 Order is hereby corrected and amended to reflect the fact that the motion for summary judgment filed by Plaintiff Wilshire ...

should be, and hereby is, granted in part only and that partial summary judgment is hereby entered in favor of Plaintiff to the extent that this Court hereby concludes that the lien of Wilshire's mortgage constitutes a first lien on the interests in real property of Defendant Ollie Underwood and that Plaintiff is entitled to foreclosure of such interests as prayed for in its Complaint. Except to the foregoing extent, Plaintiff's Motion for Summary Judgment is denied.

(R. 38). Wilshire then named the Underwoods as appellants in the present action. The summary judgment order, entered after the T.R. 60(B) request for relief, granted Wilshire a judgment as to Ollie Underwood's interest in the property because his interest was not affected by the Timber Ridge judgment. Wilshire makes no appellate claim with regard to the grant of summary judgment in its favor against Ollie Underwood's interest. As noted, Wilshire filed the only appellate brief.[2]

## *DECISION*

 Wilshire urges that the trial court improperly granted summary judgment for Timber Ridge thereby granting Timber Ridge a priority lien over the property interests attributable to Lenora Underwood and Marshall Underwood.[3]

On appeal, the standard of review of a summary judgment motion is the same as that used in the trial court: summary judgment is appropriate only where the evidence shows there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. All facts and reasonable inferences drawn from those facts are construed in favor of the non-moving party. The review of a summary judgment motion is

---

2. "When an Appellee fails to submit an appellate brief, it is within this court's discretion to reverse the trial court's ruling if the appellant makes a prima facie showing of reversible error. If the appellant is unable to meet this burden, we will affirm. This rule was designed to protect the court and to relieve us of the burden of controverting the arguments advanced for a reversal where such a burden

properly rests with the appellee." *Auto-Owners Ins. Co. v. Cox,* 731 N.E.2d 465, 467 (Ind. Ct.App.2000) (citations omitted).

3. The record of proceedings contains assertions that both Lenora and Marshall are deceased.

limited to those materials designated to the trial court. We must carefully review decisions on summary judgment motions to ensure that the parties were not improperly denied their day in court. *Tom–Wat, Inc. v. Fink,* 741 N.E.2d 343, 346 (Ind.2001) (citations omitted). Where the facts material to the proceedings are not in dispute, this court determines whether the trial court correctly applied the law to the facts. *Grant County Comm'rs v. Cotton,* 677 N.E.2d 1103, 1104 (Ind.Ct.App.1997), *trans. denied.*[4]

Wilshire contends that the trial court improperly refused to apply the doctrine of equitable subrogation to the refinanced 1993 mortgage. According to Wilshire, by applying the doctrine, the refinanced 1993 mortgage, assigned to Wilshire, would maintain the same superior position Fleet held with the original 1991 mortgage, and would not alter the inferior position the Timber Ridge judgment held when it was obtained. For the reasons discussed below, we conclude that equitable subrogation is inapplicable under the circumstances.

■ Wilshire contends that Fleet's refinanced 1993 mortgage was a continuation of the original 1991 Fleet mortgage. We disagree.

The original 1991 mortgage had a different document number than the refinanced 1993 mortgage. The Underwoods borrowed different principal amounts in the original 1991 mortgage and the refinanced 1993 mortgage.

The settlement statement executed with the refinanced 1993 mortgage lists "PAY-OFF ... FLEET FINANCE, INC. ... 43336.35." (R. 25). With additional amounts "PAID FROM BORROWER'S FUNDS AT SETTLEMENT," (R. 25), for a title company fee, title insurance, an appraisal fee, a credit report, recording fees, and payment of taxes. The total principal amount borrowed in the refinanced mortgage was $45,152.65.

As noted in FACTS, the original 1991 mortgage has a stamped release notation stating that the mortgage release was entered in the "Release and Assignment Record 119 Page 496 Instrument Number 320638." (R. 22). The release notation is signed by the Recorder and dated November 22, 1993.

Wilshire's complaint, and the assignment to Wilshire of the refinanced 1993 mortgage, indicates the refinanced mortgage was recorded on "November 5, 1993 in Mortgage Record A700 pages 586–588." (R. 86). The assignment from Fleet to Wilshire refers to the assignment of the mortgage dated October 21, 1993, "in the *original* loan amount of $45152.65 from" [the Underwoods]. (R. 92) (emphasis supplied). The assignment lists the recording date of the assigned mortgage as November 5, 1993 "in Book A700 Page 586–588 Doc/Instr# 319533." (R. 92).

In summary, the documentation reflects that the original 1991 mortgage and the refinanced 1993 mortgage are in different principal amounts, have different document numbers, and were each treated as original mortgages by Fleet and Wilshire. Fleet's assignment of the refinanced 1993 mortgage to Wilshire lists the refinanced

---

4. Wilshire advances the principle that review on summary judgment is directed to questions of law when no factual dispute exists, but Wilshire also contends that Timber Ridge is not entitled to summary judgment because the evidence is not *sufficient* to disclose the authenticity of Timber Ridge's judgment or that the judgment has not been paid. It is not clear whether Wilshire contends that Timber Ridge did not properly designate the materials necessary to obtain summary judgment. In any event, the record of proceedings, one volume from the first appeal initiated by Wilshire and one volume from this appeal, contains both the 1991 Timber Ridge judgment, and this court's decision affirming the judgment in favor of Timber Ridge against Lenora and Marshall. Additionally, the designated material submitted in support of summary judgment contains allegations that the judgment was filed with the Monroe County Clerk, and that the judgment has not been paid. We will not address the issue further.

mortgage as the *original* loan. The 1991 mortgage no longer existed once it was paid in total and released. *See* Ind.Code § 32–8–11–5 (providing: "Every mortgagee of lands whose mortgage has been recorded, having received full payment of the sum or sums of money therein specified from the mortgagor, shall, at the request of such mortgagor, enter satisfaction on the margin or other proper place in the record of such mortgage, which shall operate as a complete release and discharge thereof"). The refinanced 1993 mortgage constituted a separate, distinct, and original mortgage.

 Next, we turn to the doctrine of equitable subrogation and whether it applies to the refinanced 1993 mortgage in order to place Wilshire in the same priority position Fleet held with the original 1991 mortgage. In *Osterman v. Baber*, 714 N.E.2d 735 (Ind.Ct.App.1999), *trans. denied*, this court analyzed application of the doctrine:

> Equitable subrogation is applicable when a "party, not [acting as] a mere volunteer, pays the debt of another which, in good conscience, should have been paid by the one primarily liable." *Loving v. Ponderosa Sys., Inc.* (1985) Ind., 479 N.E.2d 531, 536 (citing *National Mut. Ins. Co. v. Maryland Cas. Co.* (1963), 136 Ind.App. 35, 41, 187 N.E.2d 575, 578, *trans. denied*). At that time, if equity permits, the party who has paid the creditor, or subrogee, becomes entitled to the legal rights and security originally held by the creditor. "Subrogation depends upon the equities and attending facts and circumstances of each case." *Ticor Title Ins. Co. v. Graham* (1991) Ind.App., 576 N.E.2d 1332, 1338, *trans. denied*. It is "a highly favored doctrine, which is to be given a liberal application." 73 Am.Jur.2d Subrogation § 7 (1974) (citations omitted). However, while ordinary negligence will not bar the application of subrogation, "[t]he remedy will not be allowed where the party is guilty of cul-

pable negligence." *Ticor*, supra at 1338. Thus, a party who pays the debt of another may be substituted in place of the other if he was not acting (1) as a mere volunteer and (2) with "culpable negligence."

> Under Indiana common law, there are no degrees of negligence. *South Eastern Indiana Natural Gas Co., Inc. v. Ingram* (1993) Ind.App., 617 N.E.2d 943. It is therefore difficult, at best, to place the term "culpable negligence" within an appropriate frame of reference. Suffice it to say, however, we conclude that the term contemplates action or inaction which is more than mere inadvertence, mistake or ignorance. 83 C.J.S. Subrogation § 6 (1953).

*Id.* at 737–38. We noted that "[i]t would be a gross misapplication of the doctrine of subrogation were we to hold that its cloak settles automatically upon one who has simply made a mistake, when it is a commercial transaction involving a consideration." *Id.* at 738 (footnote omitted) (quoting *Coy v. Raabe*, 69 Wash.2d 346, 418 P.2d 728, 731 (1966)).

 In *Osterman*, a title search was conducted in conjunction with Osterman's purchase of property owned by the Orrs. After the title search, Baber obtained a judgment against the Orrs. The judgment was recorded. A handwritten note on the title commitment noted a "new judgment" against the Orrs with a cause number. *Osterman v. Baber*, 714 N.E.2d at 737. One week after the judgment, Osterman closed on the purchase of the property and executed a note in favor of a mortgage company. The mortgage was then assigned to Norwest. Norwest paid the existing mortgage indebtedness in order to acquire a senior mortgage lien. We held that the notation gave Norwest, a sophisticated lender, actual knowledge of the intervening lien. *Id.* We stated:

> Whatever fairly puts a reasonable, prudent person on inquiry is sufficient notice to cause that person to be charged with actual notice, where the means of

knowledge are at hand and he omits to make the inquiry from which he would have ascertained the existence of a deed or mortgage. Thus, the means of knowledge combined with the duty to utilize that means equates with knowledge itself.

*Id.* (quoting *Keybank Nat. Ass'n v. NBD Bank,* 699 N.E.2d 322, 327 (Ind.Ct.App. 1998) (citation omitted in *Osterman*)). "The same reasoning applies to liens which are recorded." *Osterman v. Baber,* 714 N.E.2d at 738.

We decided that Norwest's failure to protect its rights when it "had the means to insist upon an updated title search to ensure that it would be the most senior lien[holder] against the property before it extinguished the [existing] mortgages" amounted to more than a simple mistake, and that Norwest placed its own interests at risk. *Id.* We concluded that Norwest was not entitled to the protection of equitable subrogation. *Id.*

■■■■ Wilshire argues that *Osterman* is not an impediment to relief under the circumstances in this case because there is no evidence that Fleet or Wilshire[5] had actual knowledge of Timber Ridge's 1991 judgment. We do not read *Osterman* to imply that so long as a sophisticated lender does not have actual knowledge of an intervening lien, it is entitled to assume its former priority position through the doctrine of equitable subrogation when it has mistakenly released a senior mortgage lien without finding the intervening judgment lien. The level of expertise of a sophisticated lender is central to the decision in *Osterman. See Id.* ("the means of knowledge combined with the duty to utilize that means equates with knowledge itself").

Further, equitable subrogation cannot be applied to a sophisticated lender by the mere assertion of a mistake. *Id.*

■■■■ In requesting equitable relief, Wilshire urges us to disregard the fact that as a mortgage lender its commerce depends upon performance of exactly the function that would have revealed the Timber Ridge recorded judgment. *See Id.* (by failing to insist upon an updated title search and extinguishing its senior lien, the lender placed its interests at risk); *First Federal Savings Bank v. United States,* 118 F.3d 532 (7th Cir.1997) (under Indiana law, mortgagee, as a sophisticated lender, whose loan was used to extinguish a first mortgage, was not entitled to be equitably subrogated to rights of previous first mortgagee and take priority over intervening federal tax lien that title insurer failed to discover). Applicability of the doctrine turns upon an assessment of the equities and attending circumstances of each case, *see Ticor Title Ins. Co. v. Graham,* 576 N.E.2d 1332, 1338 (Ind.Ct.App. 1991) *trans. denied,* and one factor is whether the party requesting equitable relief engages in commercial transactions for consideration. *See Osterman v. Baber,* 714 N.E.2d at 738.

Another factor in our determination, and one which Wilshire urges us to ignore, is whether a title insurer had an opportunity to review the title and find the recorded judgment lien.[6] That a title insurer was paid to perform precisely the function that would have revealed the Timber Ridge judgment lien is a factor within the purview of a determination of the equities. *See Osterman v. Baber,* 714 N.E.2d at 738; *First Federal Savings,* 118 F.3d at 534 (existence of title insurance a controlling

---

5. Fleet's conduct is attributable to Wilshire as the assignee of the mortgage because Wilshire gained only the rights Fleet had at the time of the assignment. *Cf. Ticor Title Ins. Co. v. Graham,* 576 N.E.2d at 1338 (assignment confers complete and present right in subject matter to assignee).

6. In part, Wilshire contends that the existence of a title insurer in the process is irrelevant, and that such evidence should not be considered. We do not perceive our acknowledgement of a title insurer's role, *i.e.,* to search for liens and other impediments or clouds on a title, as a violation of the long-standing opposition to evidence of insurance commonly associated with tort proceedings.

**1180**

factor when weighing equities in a commercial transaction: "[e]ither they insure or they don't. It is not the province of the court to relieve a title insurance company of its contractual obligation"). Here, a title insurer was listed on the settlement statement for the refinanced 1993 mortgage, and the statement included payments to the title insurer for a "Settlement or closing fee," and for "Title insurance." (R. 25). The evidence indicates another opportunity to have discovered Timber Ridge's recorded 1991 judgment.

Wilshire advances a public policy argument in support of its position that the decision in *First Federal Savings* should not be applied to the present circumstances:

> Contrary to the express purpose for the doctrine (i.e.[ ], preventing unearned windfalls and enhanced priorities to unknown subordinate lienholders when senior liens are repaid due to confusion or simple human error on the part of persons examining title), [the holding in] *First Federal Savings* [with regard to title insurance] would allow and encourage such windfalls and inordinately impose retribution for simple mistakes. The social cost of this equation, in the form of enhanced title insurance premiums and delayed closings due to hypercautious search techniques, is not something the Seventh Circuit even addressed in its opinion.

Appellant's Brief at 20. When distilled, Wilshire's argument merely requests that we shift the burden to do that for which it and title insurers are compensated from them to third parties who were not negligent and who were not associated with the transaction. We agree with the observation in *First Federal Savings* that title insurers "insure or they don't." *First Federal Savings*, 118 F.3d at 534.

■ Wilshire's public policy argument amounts to a request that we not view the circumstances but instead offer relief when a mistake is made. The doctrine of equitable subrogation will not, as a matter of

right, relieve a sophisticated lender from the burden of its mistake or negligence when intervening liens are not discovered before release of a senior lien. *See Osterman v. Baber*, 714 N.E.2d at 738–39. The decision whether to apply the doctrine requires an assessment of the equities and attending circumstances. *See Id.* at 737; *Ticor Title Ins. Co.*, 576 N.E.2d at 1338.

■ Finally, Wilshire contends that allowing a first priority to the Timber Ridge judgment results in a windfall to Timber Ridge and unjustly enriches Timber Ridge because at the time of the 1991 judgment, Timber Ridge's lien was junior to Fleet's mortgage. A similar argument was rejected in *Osterman*. In *Osterman* we stated:

> Norwest argues that if we do not apply subrogation, [the judgment lienholder] will gain a windfall unjustly and at the expense of innocent third parties. We disagree. We find the reasoning of *Universal Title, supra*, 942 F.2d at 1319, to be persuasive upon this issue. In that case, the court concluded that there was no windfall for the I.R.S. because it was to receive only that to which was entitled—a full payment of its lien. Further, the court stated that, "[t]he doctrine of legal subrogation requires more than a showing that a junior lienholder will be placed in a better position than the lienholder would be in if legal subrogation applied."

*Id.* at 739 (some citations omitted). We went on to note that the judgment lienholder was an innocent party who did not scheme to gain payment on the judgment lien. *Id.* at 739–40. Thus, the judgment lienholder, who was receiving only that to which he was entitled, was not unjustly enriched. *Id.* at 740. Here, Timber Ridge's elevation to first lienholder occurred in 1993 when Fleet extinguished its priority mortgage lien. At the time of the refinanced 1993 mortgage, the only mortgage assigned to Wilshire, Timber Ridge's 1991 recorded judgment was in place. Timber Ridge will not receive a windfall

due to the priority of its 1991 judgment over the 1993 mortgage; instead, it may receive that to which it is entitled.[7]

 Wilshire's[8] action or inaction is pertinent with regard to innocent third parties. "The negligence of a person seeking subrogation is chiefly of significance where there are subsequently intervening rights involved which would be prejudiced if subrogation were allowed." *Ticor Title Ins. Co.*, 576 N.E.2d at 1338; *see also Home Owners' Loan Corp. v. Henson*, 217 Ind. 554, 29 N.E.2d 873, 875 (1940) (determining applicability of equitable subrogation, and noting that no third party interests had intervened).

We conclude that the mortgagee had the duty and the means to discover the 1991 Timber Ridge judgment lien before releasing the original 1991 mortgage that held the senior lien position. Timber Ridge was not a party to and did not induce the release or the decision to provide a refinanced mortgage in 1993. Once the original 1991 mortgage was released, Timber Ridge's recorded judgment became the senior lien. That the mortgagee's negligence played a role in elevating Timber Ridge's junior lien to the senior lien position does not weigh in favor of demoting Timber Ridge's legitimate 1991 lien to a position junior to the 1993 mortgage.

The summary judgment in favor of Timber Ridge is affirmed.

RILEY, J., and ROBB, J., concur.

---

7. We do not have before us any evidence of an assessment of the value of the property or an estimate of the proceeds a foreclosure sale might bring.

8. Fleet's conduct is attributable to Wilshire as the assignee of the mortgage because Wilshire gained only the rights Fleet had at the time of the assignment. *Cf. Ticor Title Ins. Co.*, 576 N.E.2d at 1338.